**STATE of Oklahoma ex rel. OKLAHO-MA BAR ASSOCIATION, Complainant,**

v.

**Burl A. PEVETO, Jr., Respondent.**

**S.C.B.D. No. 2831.**

Supreme Court of Oklahoma.

Dec. 2, 1980.

Doyle W. Argo, Gen. Counsel, Oklahoma Bar Association, Oklahoma City, for complainant.

Lyn E. Ables, Madill, for respondent.

IRWIN, Vice Chief Justice.

The material facts alleged in the complaint filed against respondent, Burl A. Peveto, Jr., by the Oklahoma Bar Association, are not disputed.

COUNT I

A Mrs. Moore was involved in an automobile accident on May 21, 1976. The following day she began experiencing pain and on May 24, 1976, consulted a physician. On the advice of her doctor, Mrs. Moore began wearing a neck brace. She returned to her doctor a week later because she was still having pain and it was "going on down to my back."

Mrs. Moore first sought the legal services of the respondent on June 7, 1976. At this meeting Mrs. Moore was wearing the neck brace and she explained the accident and the medical attention she received. The respondent agreed to represent her on a contingency fee basis.

Mrs. Moore saw approximately six doctors and one chiropractor over the next few months. Some indicated they could find nothing wrong with her; others said her injuries were a result of the accident. Respondent did not file the law suit until September 20, 1978 although he had told Mrs. Moore and her husband that the suit had been filed at an earlier date. The petition was signed by the respondent and filed by him without either Mr. or Mrs. Moore having seen it. In the petition, respondent alleged that Mrs. Moore did not discover her injuries until September 29, 1976. The record discloses that respondent represented to the Moores that the personal injury action had been filed in late November or December, 1976, and awaiting trial date.

The defendant in that action filed a special demurrer to the petition, contending that the statute of limitations barred the action. The demurrer was sustained and respondent appealed and in the petition in error[1] respondent again alleged that his client first discovered her injuries September 29, 1976.

Respondent defends his actions by asserting the lack of medical evidence to substantiate any injuries. He contends that the only corroborating evidence was the report of the chiropractor; and due to its form, misspelled words, the apparent lack of medical knowledge, and the general "tone" of the report, he considered even this evidence to be insufficient. Respondent also argues that his client realized no loss, and that there was no basis for a personal injury action.

## COUNT II

Mr. Moore, the husband of Mrs. Moore, allegedly contacted the respondent in the early part of 1977 to inquire as to the status of Mrs. Moore's personal injury action and at that time requested respondent to represent him in a foreclosure action filed against him involving some past due notes. Mr. Moore's mother, as guarantor of the notes, was also a named defendant in the action.

On February 2, 1977, respondent filed an entry of appearance on behalf of Mr. Moore and his mother, reserving thirty (30) days in which to plead or answer. On March 7, 1977, respondent filed an application for extension of time and again signed the document as the attorney for Mr. Moore and his mother. On April 6, 1977, respondent filed a demurrer as the attorney for the defendants. The demurrer was overruled on April 26, 1977 and the defendants were granted twenty (20) days to answer or further plead. Respondent failed to file any further pleadings on behalf of the Moores. On March 14, 1978, the case was set for pretrial conference to be held on March 24, 1978. The order for pretrial conference indicates that a copy was sent to the respondent as attorney for the Moores. Respondent failed to appear or communicate with the court concerning his absence at the pretrial conference. The court entered a default judgment against the Moores on the oral application of plaintiff. The record shows the default judgment was entered in March, 1978, but that respondent never told Mr. Moore about it. It also shows that when Mr. Moore discovered the default judgment 6 months after its entry, he asked the respondent the status of the suit. Respondent said that everything would be worked out. There was no mention of the default judgment in this conversation.

Respondent's "representation" of his clients speaks for itself in showing his neglect of his clients' affairs. In defense of his action, respondent claims that he was never hired by Mr. Moore, but simply filed a few pleadings in his behalf to gain some additional time, as requested by Mr. Moore.

1. Affirmed on Appeal and Mandate Issued.

Respondent also argues that no fee or compensation was paid to him, there was no defense to the foreclosure, Mr. Moore could not afford to hire a lawyer, and that his clients received the benefits of, but no detriment due to, his actions.

. . . . .

Complainant first contends that respondent's conduct under both counts violates the mandatory provision of Canons VI and VII of the Code of Professional Responsibility; and that respondent's misrepresentation to his clients under both counts are in and of themselves grounds for discipline.

In reference to the automobile accident litigation wherein respondent told his clients that the action had been filed and represented to the district court and this court that Mrs. Moore was not aware of her injuries until September 29, 1976 (to avoid the statute of limitations), the trial authority found that respondent's conduct in the misrepresentations to his client and to the district and supreme court does not mean the standards and ideals required by attorneys.

The trial authority found:

"Deceit and misrepresentation by a lawyer to his client are prohibited by DR1–102(A)(4). This rule of discipline provides that:

'(A) lawyer shall not: (4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.' DR1–102(A)(4).

I further conclude that the misrepresentations to the client, to the District Court and to the Supreme Court are violative of DR7–102(A)(5) which provides:

'In his representation of a client, a lawyer shall not: (5) knowingly make a false statement of law or fact.' "

In reference to the default judgment on the notes, the trial authority said "the respondent was attorney of record for Mr. Moore and his mother and took no steps to withdraw from the case prior to voluntarily allowing pre–trial to occur and default judgment to be entered, I conclude that the respondent was the attorney employed, with employment being accepted and was the attorney of record for those defendants in that case and took no steps to withdraw from the case. Application to withdraw upon receipt of notice of the setting of the matter for pre–trial would have been most appropriate and the proper conduct under DR2–110(A)(1)(2)." [2]

Disciplinary Rule 6–101(A)(3) provides: "A lawyer shall not: . . . Neglect a legal matter entrusted to him."

American Bar Association Informal Opinion 1273 defines "neglect." Neglect

". . . involves indifference in and consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of error of judgment made in good faith."

Disciplinary Rule 7–101(A)(2) provides: "A lawyer shall not: . . . fail to carry out a contract of employment entered into with a client for professional services . . ."

In *State ex rel. Oklahoma Bar Association v. Hatcher*, 452 P.2d 150, 154 (Okl. 1969),

"The attorney–client relationship is one of the highest trust and confidence. This relationship requires that an attorney's dealing with his client must be characterized by the utmost candor and fairness."

---

2. DR2–110. Withdrawal from Employment

(A) In general.

(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.

(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

This Court also stated in *Northeastern Oklahoma Community Development Corporation v. Adams*, 510 P.2d 939, 941 (Okl. 1973), that

"... as an officer of the Court, an attorney is bound by the highest possible standards and as such carries the burden of avoiding the appearance of evil. He must conduct himself in such a way as to maintain the integrity of the profession."

The trial authority in his findings reviewed the cases of *State of Oklahoma ex rel. Oklahoma Bar Association v. Booth* (Okl.) 441 P.2d 405 (1966), wherein the lawyer was disbarred; and *State of Oklahoma ex rel. Oklahoma Bar Association v. Maynard*, Okl., 494 P.2d 655 (1972), wherein the lawyer was suspended for two years and concluded the "respondent by his conduct has violated the Code of Professional Responsibility and such conduct in the instant matter is as serious as the conduct of the attorneys in the cases reviewed." The trial court then found that "such conduct by the Respondent demonstrates a sufficient dishonest, deceitful and lack of regard for the Code of Professional Responsibility to warrant discipline to the extent that he be suspended from the practice of law for one year from the date of the trial of this matter."

■ It is evident from the Trial Authority's Findings of Fact, Conclusion of Law, and Recommendation that he very seriously considered and weighed the discipline imposed in the two cited cases with respondent's action with the rule that the primary purpose of a disciplinary proceeding is not to punish but purification of the Bar and protection of the public and courts. *State of Oklahoma ex rel. Oklahoma Bar Association v. Hall*, (Okl.), 567 P.2d 975 (1977). We concur in the views expressed by the Trial Authority but are of the opinion that his recommendation of one year suspension from the practice of law should start to run from the date this decision becomes final and not from the date of the hearing.

Respondent suspended from the practice of law for one (1) year, such suspension to start from the date this decision becomes final. The costs of this proceeding assessed against respondent.

LAVENDER, C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

BARNES, J., dissents.