STATE of Oklahoma ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

**Mitchell D. ROZIN, Respondent.**

**SCBD No. 3754.**

Supreme Court of Oklahoma.

Dec. 17, 1991.

---

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Gary A. Rife, Oklahoma City, for respondent.

HODGES, Vice Chief Justice.

Complainant, Oklahoma Bar Association, alleged one count of misconduct warranting discipline against respondent attorney, Mitchell D. Rozin. The Professional Responsibility Tribunal (PRT) found that respondent's conduct violated rules 1.3, 1.4(a), 8.4(a) and 8.4(c) of the Oklahoma Rules of Professional Conduct. Instead of the thirty-day suspension from the practice of law recommended by the complainant, the PRT recommended a sixty-day suspension.

The parties entered into Agreed Stipulations of Fact and Conclusions of Law. The stipulations reflect that the "[r]espondent is a member of the Oklahoma Bar Association and is licensed to practice law by the Supreme Court of the State of Oklahoma."

Respondent was licensed to practice law in Oklahoma at the time of the incident that resulted in these proceedings. The parties further stipulated as follows:

[1]. In June, 1989, Respondent was employed by a law firm that was hired to probate the estate of Leslie S. Schobe. Kent Schobe (hereinafter, "Schobe"), son of the deceased, was named executor of the estate in the will of the deceased. Soon afterwards, Respondent and Schobe met and proceedings were begun to have Schobe appointed as executor. Schobe was appointed and the probate procedure began.

[2]. On July 18, 1990, a hearing was to be held to conclude the probate. Respondent, on or about that date, discovered that the Notice to Creditors had not been filed or published, so the hearing could not be held. Rather than continue the hearing and correct this problem, Respondent did nothing.

[3]. After the July 18, 1990, hearing date, Schobe contacted Respondent and made inquiry into the outcome of that hearing. Respondent misrepresented to Schobe that the hearing went fine and an Order Allowing Final Accounting, Determination of Heirship, Distribution, and Discharge had been entered.

[4]. On or about September 13, 1990, Schobe attempted to contact Respondent to obtain a copy of the Order but was unable to do so, and instead spoke to ... a partner [A] in the law firm in which Respondent was an associate. Schobe asked [A] for a copy of the final order because Respondent had failed to mail him one.

[5]. Shortly after the conversation between [A] and Schobe, [A] confronted Respondent concerning the order. Respondent lied to [A] and explained that the order had been signed by Judge Kelley but had not been filed. [A] then requested Respondent to file the order and provide him with a copy of the filed order and to send certified copies to Schobe.

[6]. Respondent subsequently manufactured a document wherein he "cut and pasted" the judge's stamped signature,

the court clerk's certification and date file stamp from another order onto this document. Copies of the altered documents were provided to Schobe and a similar altered version of the order to [A], absent the court clerk's certification.

[7]. In mid-December, 1990, Respondent received a telephone call from the Office of the Oklahoma County Court Clerk and informed Respondent that Schobe had requested a certified copy of the Final Order, but an order was not found in the court file. On December 20, 1990, Respondent contacted Schobe and confessed to the misrepresentation and subsequent attempt to coverup his error.

[8]. In the conversation between Schobe and Respondent on December 20, 1990, Schobe agreed to allow Respondent to wait until after Christmas to inform the firm of his misconduct in the probate of the Schobe estate. However, Respondent failed to inform the firm of his dilemma and eventually Schobe contacted [A] directly and reported the nature of their December 20, 1990, telephone conversation regarding the Final Order.

[9]. On or about January 28, 1991, the Office of the General Counsel received a letter from Respondent setting forth his activities in the Schobe matter. Respondent admitted his violations of the Rules of Professional Conduct to the Office of the General Counsel.

[10]. Respondent's conduct violate[d] the mandatory provisions of Rules 1.3, 1.4(a), 8.4(1), and (c), Oklahoma Rules of Professional Conduct.

The PRT found the only mitigation to be that once Respondent discovered that he could no longer perpetrate the misrepresentation and that the law firm would report him to the Bar, he reported himself. The PRT decided that because of respondent's short duration of practice and because he possessed the mental capability and character to manufacture a document and misrepresent facts to his client, the respondent should be suspended for more than the thirty days recommended by the complainant and instead recommended a sixty-day suspension.

This Court exercises original jurisdiction in lawyer disciplinary proceedings. *State ex rel. Okla. Bar Ass'n v. Colston,* 777 P.2d 920, 923 (Okla.1989). The review by this Court is *de novo. Id.* Therefore, we need not address respondent's argument that the PRT penalized the respondent for not having been in practice for a longer time.

We find that the facts as stipulated are true. Not mentioned by the PRT are other facts in the respondent's favor: (1) respondent's actions were not motivated by monetary self-gain, (2) respondent has cooperated with the complainant on this matter, (3) the incident appears to be an isolated occurrence, and (4) the client suffered no economic loss. We also find that respondent contacted the complainant of his own free will without any coercion. Another mitigating factor is that respondent was a CPA who practiced for more than three years with a major accounting firm and never received a complaint or was disciplined for any reason. Further, the witnesses for the respondent attested to his general character and believe him to be a competent attorney in spite of this incidence. Respondent is active in religious and civic organizations, plays an important part in those activities, and is still well respected by the members of those organizations.

It must also be recognized that the respondent has already suffered extensively for his behavior. He was an associate in a prestigious law firm and on a partnership track. Not only did he lose all likelihood of becoming a partner, he lost his job. From this loss, he suffered significant monetary damage. He also suffered a great deal of embarrassment and loss of face with people he highly respected. The punishment which has naturally occurred must be a consideration in determining the proper discipline to be imposed by this Court.

Nevertheless, the respondent violated the Rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3–A (Supp.1988). Respondent violated rule 1.3 by failing to "act with reasonable diligence and promptness in representing a client" and rule 1.4 by failing to keep his client informed about

the status of the case. He also violated rule 8.4(a) by violating the Rules of Professional Conduct and rule 8.4(c) by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation."

In violating these rules, the respondent breached the attorney-client relationship. "The attorney-client relationship is one of the highest trust and confidence. This relationship requires that an attorney's dealing with his client must be characterized by the utmost candor and fairness." *State ex rel. Okla. Bar Ass'n v. Hatcher*, 452 P.2d 150, 154 (Okla.1969). The purposes of attorney discipline are preservation of this trust and confidence in the Bar and protection of the public and the courts. *State ex rel. Okla. Bar Ass'n v. Peveto*, 620 P.2d 392, 394 (Okla.1980). Part of that purpose is deterrence of like behavior by both the respondent and other members of the Bar. *State ex rel. Okla. Bar Ass'n v. Denton*, 598 P.2d 663, 665 (Okla.1979).

Based on these goals, the complainant initially recommended only thirty-days suspension. After the PRT recommended sixty-days suspension, the Bar adopted that recommendation. Although the PRT's recommendations are not binding, they are accorded great weight. *State ex rel. Okla. Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989). After giving the appropriate consideration to the PRT's recommendation, we believe that sixty-days suspension coupled with a two-year probation is the appropriate discipline to attain the goals.

The respondent has cited cases in support of his position that a mere reprimand is sufficient in the present case. The complainant has cited cases in support of its position that sixty days suspension is the appropriate discipline. A wide range of discipline was imposed in these cases. These cases can be reconciled because attorney discipline cases must be decided on a case-by-case basis. Each case involves different recommendations by the Bar and the PRT, different transgressions, and different mitigating circumstances. While discipline should be administered fairly, it will not be the same in all cases.

The cases cited by the parties serve as guides in the present case. We do not agree with respondent that based on prior decisions of this Court it would be unfair to impose the discipline of a sixty-day suspension in the present case. However, less than sixty-days suspension plus the two-years probation would be insufficient to satisfy the goals of attorney discipline. Therefore, it is ordered that the respondent be suspended from the practice of law for sixty (60) days, such suspension to start from the date this decision becomes final, and thereafter be on probation for two (2) years.

Respondent's probation is subject to the following conditions:

(a) Respondent shall abide by the Rules of Professional Conduct;

(b) Respondent shall cooperate with the Office of the General Counsel in any investigation of allegations of unprofessional conduct which have or may come to the General Counsel's attention; and

(c) Respondent shall be supervised by a member of the Lawyers Helping Lawyer's Committee throughout the term of his probations. Respondent's supervisor shall be required to immediately report to the Office of the General Counsel any violations of the probation conditions by respondent.

If at any time during the probation the General Counsel concludes that respondent has not complied with the terms and conditions of his probation, then the Office of the General Counsel may file an application to revoke probation with the original trial panel and that notice of the filing of the application shall be given to the respondent. A hearing shall then be scheduled with the trial panel and a determination shall be made as to whether respondent has violated the terms and conditions of the probation. If the trial panel determines there is no violation, then the probation shall continue. If the trial panel finds a violation did occur, then a recommendation shall be made to the Supreme Court for proper discipline.

Further, the respondent is ordered to pay $815.92, the costs of this proceeding, within

thirty (30) days from the date this decision becomes final.

RESPONDENT SUSPENDED FROM PRACTICE OF LAW FOR SIXTY DAYS, PLACED ON PROBATION FOR TWO YEARS THEREAFTER, AND ORDERED TO PAY COSTS.

LAVENDER, DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., with whom SIMMS and HARGRAVE, JJ., join, concurring in part and dissenting in part:

I would impose a longer suspension for this most serious breach of professional discipline.