STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

John Gregory THOMAS, Respondent.

SCBD No. 4073.

Supreme Court of Oklahoma.

Dec. 19, 1995.

As Corrected Dec. 21, 1995.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

No appearance for Respondent.

LAVENDER, Justice.

Disciplinary proceedings were initiated against respondent, John Gregory Thomas, by complainant, the Oklahoma Bar Association pursuant to Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 1991, Ch. 1, App. 1–A, as amended. In substance respondent was charged with neglecting a client's workers' compensation case— said neglect resulting in the running of an applicable time limit barring the compensation matter; misrepresenting the status of the case to the client over an extended time period; forging an order of this Court; failing to timely answer a grievance lodged against him; and negotiating a settlement with the client that included, at respondent's insistence, having the client agree not to complain to the Oklahoma Bar Association about his misconduct. Complainant seeks enhanced discipline because only last year respondent was previously disciplined by this Court for neglect of client matters and failing to respond to an order of this Court. *State ex rel. Oklahoma Bar Association v. Thomas,* 886 P.2d 477 (Okla.1994). After a hearing, the Professional Responsibility Tribunal (PRT) found respondent guilty of all misconduct charged. The PRT and complainant recommend disbarment. We, likewise, find misconduct warranting disbarment.

## STANDARD OF DETERMINATION IN BAR DISCIPLINARY PROCEEDINGS

■ In *State ex rel. Oklahoma Bar Association v. Todd,* 833 P.2d 260 (Okla.1992), we set out the standard of review in attorney disciplinary proceedings. We said:

In attorney disciplinary proceedings this Court's determinations are made *de novo.*

The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory. (citations omitted)

*Id.* at 262. Further, to warrant a finding against a lawyer in a contested case the charges must be established by clear and convincing evidence. Rule 6.12(c) of the RGDP. *State ex rel. Oklahoma Bar Association v. Miskovsky,* 824 P.2d 1090, 1093 (Okla.1991). With these principles in mind we turn to a discussion of the misconduct charged.

## FACTS OF MISCONDUCT AND DISCUSSION

■ Complainant and respondent entered into written stipulations concerning the misconduct charged. The stipulations were approved by the PRT. Except for one matter, which we will detail, respondent essentially admitted the allegations of misconduct via the written stipulations and through his testimony, given both by deposition (March 23, 1995) and at the PRT hearing of June 15, 1995. The following recitation of the facts is taken from the written stipulations, as agreed and modified at the PRT hearing, respondent's deposition and from the evidence submitted at the PRT hearing.

Respondent is a member of the Oklahoma Bar Association licensed to practice law by this Court and he was so licensed at all times relevant to the charged misconduct. Respondent's official Oklahoma Bar Association roster address is John Gregory Thomas, OBA # 8938, P.O. Box 1276, Muskogee, OK 74402.

Carol Ann Rice (hereafter Rice) suffered a back and neck injury at her job some time in 1986. Although respondent apparently was not the first attorney to handle Rice's case, he took over the matter after a proceeding

had been filed at the Oklahoma Workers' Compensation Court. Respondent failed to timely file a Form 9 (Motion to Set for Trial) within the appropriate five (5) year period, the same failing and neglect which partially caused us to discipline him in *State ex rel. Oklahoma Bar Association v. Thomas, supra.*[1]

After realizing the five (5) year time limit had run, instead of telling his client the truth when she inquired about the status of her workers' compensation case, respondent told Rice that the case had been won and that the employer had appealed to this Court, which was a fabrication. This fabrication (or ones similar to it) were told to Rice by respondent on more than one occasion over an extended period of time (about two years) and the misrepresentation(s) continued up to some time in November or December 1994—a time when respondent was requesting leniency from this Court in his previous disciplinary matter via a petition for rehearing in *State ex rel. Oklahoma Bar Association v. Thomas, supra.*

As part of his misrepresentation(s) to Rice, respondent prepared a false (i.e. forged or fabricated) Oklahoma Supreme Court order by photocopying the file stamp of the Clerk of the Oklahoma Supreme Court in an unrelated case, altering pertinent parts of this order in the unrelated case to make it appear applicable to an appeal in Rice's case and by touching up a past Chief Justice's signature (i.e. darkening spots of the signature that did not photocopy well) on this false, fraudulent order. Respondent admits to all of the above misconduct, including falsification of the order at some time in November 1994. The only matter he contests is his denial of actually giving the forged order to Rice. Re-

spondent essentially testified as follows concerning the forged order.

After forging the order on a Saturday at his office he went home, had a change of heart and realized the wrongfulness of his misrepresentation(s). He decided at such time he was going to rectify the situation by coming clean and admitting his negligence as to the workers' compensation case to Rice. Rice, however, somehow obtained the order before he had a chance to admit his misrepresentation(s) to her. Respondent asserts the order must have been given to Rice by his secretary (an ex-secretary at the time of the PRT hearing) in his absence. Respondent further essentially testified this secretary must have retrieved the forged order from his office, an order he says he must have left in his office on his credenza. Respondent also seemed to testify that he threw away any copies of the forged order he had made and he really was not sure how his secretary got the order. He also testified if he had given the order to Rice he would admit it.

Like the PRT we credit the testimony of Rice and discredit the testimony of respondent as to whether it was respondent who gave her a copy of the forged order. In the first instance, although Rice testified respondent's secretary was present, she was unequivocal that it was respondent who actually handed her a copy of the forged order at his office. Secondly, we can discern no reason that Rice would fabricate this part of her testimony, while respondent would have a motive to have a faulty memory in such regard. Thus, we conclude the evidence clearly and convincingly showed respondent

---

1. The time limit referred to by the parties as having been allowed to lapse is the one currently found at 85 O.S.1995, § 43(B). Essentially, this provision requires that when a claim for workers' compensation benefits has been filed the claimant must request a hearing and final determination in the matter within five (5) years from the date of filing or within five (5) years from the date of last payment of compensation or wages in lieu thereof. If such a request for hearing and final determination is not timely made § 43(B) provides that the matter shall be barred and dismissed by the workers' compensation court for want of prosecution, which action shall oper-

ate as a final adjudication of the right to claim compensation. Earlier provisions existent in the mid–1980s provided the same. 85 O.S.Supp. 1985, § 43(B); 85 O.S.Supp.1986, § 43(B). We finally note that the parties in their written stipulations mistakenly agreed that respondent's failing in the workers' compensation case was a failure to timely file an appeal in the matter. This error was corrected at the hearing before the PRT and the stipulations were orally amended to reflect that it was a failure to timely file a Form 9 (Motion to Set for Trial) within the applicable five (5) year period.

was the one who actually gave a copy of the forged order to Rice.[2]

Even if we are mistaken and respondent did not actually hand the order to Rice (i.e. it was the ex-secretary who did so without respondent's actual knowledge) this would not change our view of the appropriate discipline to be imposed in this matter or drastically alter our opinion as to the seriousness of respondent's misconduct. This is so for the reason that it was respondent who admittedly began the chain of events that led to Rice receiving the forged order. Even taking the evidence most favorable to respondent it is obvious the forged order respondent admits preparing was not permanently destroyed by him and was left in his office at a place accessible to his secretary, without any direction. This is obvious because no one disputes Rice did, indeed, receive a copy of the forged order, a copy of which was admitted in evidence as an exhibit at the PRT hearing and is part of the record before us. Furthermore, the simple fact is that respondent did not take any steps to rectify the situation or begin to come clean until he was confronted with his misdeed(s) by another attorney who was hired by Rice to look into the matter after she came to believe that something was not quite right about what respondent had been telling her. Only after he was so confronted did respondent appear to acknowledge his negligence as to failure to properly proceed in the workers' compensation case. He then admittedly still conducted himself in an inappropriate manner by negotiating a settlement agreement which included as part of its terms (at respondent's insistence) Rice agreeing not to file any complaint or grievance with the Oklahoma Bar Association concerning any of the misrepresentations.[3]

2. We note the ex-secretary was not presented as a witness by either complainant or respondent.

3. In addition to the parties' stipulation that part of the settlement agreement with Rice contained an attempt to contract that Rice not file any complaint or grievance with the Oklahoma Bar Association concerning any of respondent's misrepresentations, a letter dated December 19, 1994 from respondent to the attorney Rice hired to look into the matter was admitted as an exhibit at the Professional Responsibility Tribunal hearing, where respondent states in part, "[i]

In addition to their stipulations regarding the above factual matters, the parties agreed that the above conduct on the part of respondent violated the following Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991, Ch. 1, App. 3–A, as amended, to wit: Rules 1.1, 1.3, 1.4, 3.2, and 8.4(a)–(d), and Rule 1.3 of the RGDP. Rule 1.1 provides: "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Rule 1.3 of the ORPC states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Rule 1.4 sets forth that:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 3.2 requires "[a] lawyer [to] make reasonable efforts to expedite litigation consistent with the interests of the client." Rule 8.4(a)–(d) provide that:

It is professional misconduct for a lawyer to;

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

particularly request [Rice] agree not to complain to the Bar as that would likely result in my disbarment." A Release of Claim signed by Rice was also admitted into evidence. Said release shows respondent paid Rice $7,000.00 in settlement of her claim against him (the parties stipulated respondent paid this amount to Rice) and the release in part contains her purported agreement not to complain to the Oklahoma Bar Association about respondent's handling of her workers' compensation case or his misrepresentations in regard thereto.

(d) engage in conduct that is prejudicial to the administration of justice.

Finally, Rule 1.3 of the RGDP provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

We agree with the parties and the PRT that respondent's actions and inactions constituted misconduct under the Rules set forth above and that discipline is warranted.

In addition to the above misconduct, after receiving a grievance from Rice at the end of December 1994 concerning respondent's conduct, the Office of the General Counsel of the Oklahoma Bar Association, in January 1995, mailed a letter to him enclosing a copy of the grievance, and further advising he was required to make a written response which contained a full and fair disclosure of all the facts and circumstances within twenty (20) days as required by Rule 5.2 of the RGDP. Respondent failed to respond. A second letter was mailed to respondent advising him of the grievance and that he was to respond within five (5) days. He did not respond. Finally, respondent had to be served with a subpoena duces tecum to appear at the Oklahoma Bar Center on March 23, 1995 at 10:00 a.m. He showed up at such time and his deposition was taken. Respondent's failure to timely respond to the letters of the Office of the General Counsel violated the provisions of Rule 5.2 of the RGDP and Rule 8.1(b) of the ORPC and also warrants discipline.[4]

The parties also stipulated to respondent's previous discipline in *State ex rel. Oklahoma Bar Association v. Thomas, supra,* for: failure to provide competent representation to two clients in workers' compensation cases; missing the statute of limitation in two workers' compensation cases; and willfully failing to respond to an order of this Court to provide information as to respondent's payment of restitution.

After review of this record, including the parties' stipulations and the other evidence presented, we determine complainant has shown clearly and convincingly that respondent engaged in a continuing course of misconduct in relation to his representation of Rice, as we have detailed above. Given this state of affairs and respondent's initial failure to timely respond to the General Counsel's inquiry it now becomes incumbent upon us to

---

4. Rule 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the [Professional Responsibility] Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated on expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

Rule 8.1(b) of the Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: ...

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

decide the appropriate discipline for such misconduct.

## DISCIPLINE

■ We said the following concerning discipline in attorney misconduct cases in *Miskovsky, supra:*

The purpose of a disciplinary proceeding is not to punish the lawyer, but to inquire into his continued fitness to practice with a view to safeguarding the interest of the public, the courts and the legal profession.

824 P.2d at 1101. We also said regarding discipline the following in *State ex rel. Oklahoma Bar Association v. Colston,* 777 P.2d 920 (Okla.1989):

Our primary object is to protect the public and to preserve its confidence in the legal profession as well as in the judicial authority charged with the licensing function. The relationship between a lawyer and a client calls for the exercise of the highest degree of integrity and fidelity. Nothing less will be tolerated.

For the practice of their profession lawyers are licensed by this court. The maintenance of · strict integrity among the members of our bar is one of this court's constitutional responsibilities. Every licensed lawyer is presented to the public as a person worthy of confidence in his (or her) delivery of professional services. If a practitioner is shown to be unfit, it is this court's *duty*—for the public's immediate protection—promptly to withdraw from that individual the endorsement given to him (or her) by the license to practice. (footnotes omitted) (italics in original)

*Id.* at 925. In our view, the above principles applied to this case lead to the conclusion that the appropriate discipline here is disbarment.

■ Fraud and misrepresentation by an attorney toward his client are serious forms of misconduct. *State ex rel. Oklahoma Bar Association v. Brown,* 863 P.2d 1108, 1111 (Okla.1993). Likewise, the forging of legal documents is a serious breach of legal ethics which constitutes illegal conduct involving moral turpitude and justifies imposition of the most severe discipline. *State ex rel.*

*Oklahoma Bar Association v. Colston, supra,* 777 P.2d at 924. Such misconduct, coupled with neglect of client matter(s) and a record of previous discipline has resulted in disbarment. *State ex rel. Oklahoma Bar Association v. Brown, supra.*

When one adds to respondent's misconduct of client neglect, misrepresentation and forgery his attempt to forestall the filing of a grievance or complaint against him with the Oklahoma Bar Association [*State ex rel. Oklahoma Bar Association v. Colston, supra,* 777 P.2d at 925] and his failure to timely respond to the General Counsel's inquiry, it becomes plain that no other discipline is warranted here except the most severe that we can impose—disbarment.

Although we may consider mitigating circumstances at arriving at the assessment of the appropriate measure of discipline [*Id.*], no mitigating evidence exists in this record that would cause the discipline to be imposed to be less than disbarment. In the first instance, we note that respondent has wholly failed to file a brief with this Court in response to Complainant's Brief in Chief of August 4, 1995. We also note that the evidence in this record shows that respondent at various times in this disciplinary process and in his previous disciplinary episode before this Court sometimes indicates he is going to stop practicing law and move on to a new career, but he never quite accomplishes the intimated goal of shutting down his law practice. Further, although respondent has stated excuses for his misconduct that might cause one to be sympathetic to his plight (including emotional pressure caused by a severe injury to his wife and problems with attorney(s) hired by him or associated with him in an effort to lessen an increased work load), we cannot allow sympathy to impact our decision when protecting the public is our goal. Finally, we see no real evidence in this record that respondent understands and appreciates the seriousness of his deceit and misconduct that is shown by this record.

The bottom line in this case is that our review convinces us that respondent is unfit to practice law. His conduct over a continuing period of time has shown that to be the case. Anything short of disbarment would

be at odds with our duty to protect those people who might hire respondent as a lawyer in the future. Thus, no other sanction except disbarment will serve to protect the paramount interest of preserving public confidence in the legal profession [*State ex rel. Oklahoma Bar Association v. Downing,* 863 P.2d 1111, 1116 (Okla.1993)] and protecting the public interest.

Accordingly, we order that respondent be DISBARRED AND HIS NAME STRICKEN FROM THE ROLL OF ATTORNEYS. Further, the costs associated with this disciplinary proceeding in the amount of $1,031.79 shall be borne by respondent. These costs are to be paid within ninety (90) days from the date this opinion becomes final.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

SUMMERS, J., not participating.