2003 OK 116

STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Stephen Farris SHANBOUR, Respondent.

No. 4781.

Supreme Court of Oklahoma.

Dec. 23, 2003.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma for Complainant.

John W. Coyle, III of the Coyle Law Firm, Oklahoma City, Oklahoma for respondent.

## LAVENDER, J.

¶ 1 In December 2002, pursuant to Rule 7 (Summary Disciplinary Proceedings Before Supreme Court) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1-A, as amended [1], complainant, the Oklahoma Bar Association (OBA), by letter from its General Counsel's Office, notified us respondent, Stephen Farris Shanbour, a licensed attorney, after guilty pleas, was convicted and sentenced on ten (10) criminal charges in Oklahoma County District Court. The ten (10) charges were part of a seventy-five (75) count information filed in the criminal district court case in August 2000. The charges to which respondent plead and on which he was convicted and sentenced were one count of stalking in violation of 21 O.S. § 1173 and nine felony counts of either distribution or attempted distribution of obscene or indecent material in violation of 21 O.S. § 1021.[2]

1. No provision contained in Rule 7 (Summary Disciplinary Proceedings Before Supreme Court) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1-A, has been amended since 2001. In *State ex. rel. Oklahoma Bar Ass'n v. Shofner*, 2002 OK 84, n. 1, 60 P.3d 1024, we said the following concerning Rule 7, RGDP and its provisions:

    Rule 7 ... sets out the procedures for summary disciplinary proceedings before this Court. Rule 7.1 thereof provides that an attorney who has been convicted of a crime demonstrating their unfitness to practice law shall be subject to discipline. Rule 7.4 provides that if the conviction becomes final without appeal ... this Court shall order the lawyer to show cause why a final order of discipline should not be made, and the lawyer may in the interest of explaining his conduct or by way of mitigating the discipline to be imposed submit a brief and evidence tending to mitigate the severity of discipline. Rule 7.4 also allows the attorney's response to the show cause order to make a request for a hearing. In a post-conviction bar disciplinary hearing facts that gave rise to the criminal charge cannot be relitigated. In such a hearing, the range of permissible inquiry is confined to issues germane to mitigation or severity of the bar disciplinary sanction to be visited upon the respondent lawyer. (Case citations omitted.)

    Further, Rule 7.2 (Transmittal of Record Relating to Conviction), RGDP, provides that the information and the judgment and sentence of conviction shall be conclusive evidence of the conviction of the crime upon which the judgment and sentence is based. Respondent's convictions in this matter are final and he has not requested any type of hearing regarding mitigation or severity of the disciplinary sanction to be imposed. The case is, thus, properly before us on the written briefs of the parties, which both contain documentary submissions/attachments. Also, our Order in January 2003 issued an interim suspension suspending respondent from the practice of law because we determined his convictions appeared to facially demonstrate his unfitness to practice law. *See State ex rel. Oklahoma Bar Ass'n v. Badger*, 1993 OK 43, 901 P.2d 790, 791 (interim suspension order required when crime for which a respondent lawyer stands convicted facially demonstrates unfitness to practice law) and *State ex rel. Oklahoma Bar Ass'n v. Armstrong*, 1990 OK 9, 791 P.2d 815, 818 (conviction of some crimes will facially demonstrate lawyer's unfitness to practice while conviction of others will not).

2. The criminal information charging respondent was filed in Oklahoma County District Court Case No. CF–2000–4864. At said time 21 O.S.Supp.1999, § 1021 provided:

    A. Every person who willfully either:

    1. Lewdly exposes his person or genitals in any public place, or in any place where there are present other persons to be offended or annoyed thereby;

    2. Procures, counsels, or assists any person to expose such person, or to make any other exhibition of such person to public view or to the view of any number of persons, for the purpose of sexual stimulation of the viewer;

    3. Writes, composes, stereotypes, prints, photographs, designs, copies, draws, engraves, paints, molds, cuts, or otherwise prepares, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, book, picture, photograph, motion picture, figure, form of any description or any type of obscene material; or

    4. Makes, prepares, cuts, sells, gives, loans, distributes, keeps for sale, or exhibits any disc record, metal, plastic, or wax, wire or tape recording, or any type of obscene material or any other kind of sound recording of any obscene or indecent language, poetry, or songs, or who speaks any words by means of a telephone to any person which are offensive to decency or are calculated to excite vicious or lewd thoughts or acts, or who speaks any other communicable words which are offensive to decency or are adapted to excite vicious or lewd thoughts or acts,

    shall be guilty, upon conviction, of a felony and shall be punished by the imposition of a fine of

¶ 2 In November 2002 respondent was sentenced on the charges. On the stalking count he received a one year sentence in the custody and control of the Oklahoma County Sheriff. On four counts he received two years imprisonment in the custody and control of the Oklahoma Department of Correc-tions (DOC), the imprisonment to be served concurrently on each and with the stalking count. On the remaining five counts he received ten (10) year suspended sentences under DOC's custody and control, these counts to be served concurrently with each other, but consecutively to his imprisonment.[3]

not less than Five Hundred Dollars ($500.00) nor more than Twenty Thousand Dollars ($20,-000.00) or by imprisonment for not less than thirty (30) days nor more than ten (10) years, or by both such fine and imprisonment. Persons convicted under paragraphs 3 and 4 of subsection A of this section shall not be eligible for a deferred sentence.

B. Every person who:

1. Willfully solicits or aids a minor child to perform; or

2. Shows, exhibits, loans, or distributes to a minor child any obscene or indecent writing, paper, book, picture, photograph, motion picture, figure, or form of any description or any type of obscene material for the purpose of inducing said minor to participate in, any act specified in paragraphs 1, 2, 3 or 4 of subsection A of this section shall be guilty, upon conviction, of a felony and shall be punished by imprisonment in a state correctional institution for not less than ten (10) years nor more than thirty (30) years. Persons convicted under this subsection shall not be eligible for a deferred sentence.

The amendments made to § 1021 by 2000 Okla.Sess.Laws, Ch.208, § 1; 2002 Okla.Sess. Laws, Ch.20, § 1; and 2003 Okla.Sess.Laws, Ch.308, § 1, do not impact our disposition in this matter.

3. Although the information in the criminal case indicates the stalking violation to which respondent plead guilty was "feloniously committed" by him, we have, at least, some question as to whether he plead guilty to and was sentenced on a misdemeanor charge instead. The question arises as the sentence he received on said stalking count, i.e., one year in the control and custody of the Oklahoma County Sheriff, appears consistent with a misdemeanor charge, rather than a felony, under the applicable provisions of 21 O.S.2001, § 1173. Section 1173 provides in pertinent part:

A. Any person who willfully, maliciously, and repeatedly follows or harasses another person in a manner that:

1. Would cause a reasonable person or a member of the immediate family of that person as defined in subsection F of this section to feel frightened, intimidated, threatened, harassed, or molested; and

2. Actually causes the person being followed or harassed to feel terrorized, frightened, intimidated, threatened, harassed, or molested,

upon conviction, shall be guilty of the crime of stalking, which is a misdemeanor punishable by imprisonment in a county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment.

B. Any person who violates the provisions of subsection A of this section when:

1. There is a permanent or temporary restraining order, a protective order, an emergency ex parte protective order, or an injunction in effect prohibiting the behavior described in subsection A of this section against the same party, when the person violating the provisions of subsection A of this section has actual notice of the issuance of such order or injunction; or

2. Said person is on probation or parole, a condition of which prohibits the behavior described in subsection A of this section against the same party or under the conditions of a community or alternative punishment; or

3. Said person, within ten (10) years preceding the violation of subsection A of this section, completed the execution of sentence for a conviction of a crime involving the use or threat of violence against the same party, or against any member of the immediate family of such party,

upon conviction, shall be guilty of a felony punishable by imprisonment in the State Penitentiary for a term not exceeding five (5) years or by a fine of not more than Two Thousand Five Hundred Dollars ($2,500.00), or by both such fine and imprisonment.

C. Any person who commits a second act of stalking within ten (10) years of the completion of sentence for a prior conviction under subsection A of this section, upon conviction thereof, shall be guilty of a felony punishable by imprisonment in the State Penitentiary for a term not exceeding five (5) years, or by a fine of not more than Two Thousand Five Hundred Dollars ($2,500.00), or by both such fine and imprisonment.

D. Any person who commits an act of stalking within ten (10) years of the completion of execution of sentence for a prior conviction under subsection B or C of this section, shall, upon conviction thereof, be guilty of a felony punishable by a fine of not less than Two Thousand Five Hundred Dollars ($2,500.00) nor more than Ten Thousand Dollars ($10,-000.00), or by imprisonment in the State Penitentiary for a term not exceeding ten (10) years, or by both such fine and imprisonment. (Emphasis added.)

¶ 3 In January 2003, this Court issued an Order suspending respondent from the practice of law; gave him an opportunity to show cause, in writing, why a final order of discipline should not be made, whether he desired a hearing and to submit a brief and documents in the interest of explaining his conduct or mitigating the severity of discipline; and allowed the OBA to respond to his submissions. Respondent did not request a hearing. The OBA argues for disbarment; respondent for a suspension of two years and one day, retroactive to his arrest date in 2000 regarding the criminal charges. We hold the appropriate discipline is disbarment.

¶ 4 In *State ex. rel. Oklahoma Bar Ass'n v. Shofner*, 2002 OK 84, ¶¶ 4–6, 60 P.3d 1024, 1027, we delineated our role and responsibility in attorney disciplinary cases brought before us in the following language:

In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive original jurisdiction, not as a reviewing tribunal. *State ex rel. Oklahoma Bar Ass'n v. Downing*, 1990 OK 102, 804 P.2d 1120, 1122. It is our nondelegable, constitutional responsibility to decide the discipline warranted when an attorney is found to have engaged in professional misconduct. *Id.; State ex rel. Oklahoma Bar Ass'n v. Barnett*, 1997 OK 61, ¶ 2, 940 P.2d 493, 495 (Court's duty in misconduct cases is to independently determine the proper discipline). . . .

Our responsibility is not to punish the offending lawyer, but to assess his/her continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Meek*, 1994 OK 118, 895 P.2d 692, 699. In misconduct cases, we are required to exercise our responsibility with a view to safeguarding the interests of the public, the courts and the legal profession. *Id.* In determining the proper discipline this Court compares the circumstances of the involved case with those of similar previous disciplinary cases involving other attorneys and we examine the respondent's previous disciplinary record—both inquiries geared to determining how best to serve the welfare of the public and the integrity of the bar. *Meek, supra,* 895 P.2d at 700. Also, to arrive at appropriate discipline, a fit factor to consider is the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. *State ex rel. Oklahoma Bar Ass'n v. McMillian,* 1989 OK 16, 770 P.2d 892, 899; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, 567 P.2d 975, 978.

Mitigating circumstances are also often considered when assessing the appropriate measure of discipline. *State ex rel. Oklahoma Bar Ass'n v. Thomas,* 1995 OK 145, 911 P.2d 907, 913. Also, although discipline should be administered fairly (i.e. evenhandedly), this Court has recognized that the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. *See State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, 824 P.2d 1127, 1130. (Paragraph numbers omitted.)

¶ 5 In our view, respondent stands convicted of crimes that demonstrate his unfitness to practice law and that warrant his disbarment. The charging information in the criminal case and materials presented to us by both respondent and complainant to support their respective positions on discipline set forth the nature of the crimes involved here. In essence, at some time in the fall of 1998 respondent began a relentless campaign to harass a former secretary (R. H.). The harassment expanded to include R. H.'s boyfriend (T.H.) and the boyfriend's daughter

---

In any event, our decision in this attorney disciplinary proceeding that the appropriate discipline is disbarment would be the same whether respondent actually plead guilty and was convicted and sentenced on a misdemeanor or felony charge on the stalking charge, given his conviction on nine felony charges under § 1021. We also note, as to § 1173, we quote from the 2001 Oklahoma Statutes even though we realize the criminal information was filed in the district court case in August 2000 and respondent's conduct culminating in the criminal charges against him pre-dated the 2001 Oklahoma Statutes. The amendments made to § 1173 by 1997 Okla.Sess. Laws, Ch.133, § 307; 1999 Okla.Sess.Laws, 1st Ex.Sess., Ch.5, § 205; and 2000 Okla.Sess.Laws, Ch.370, § 14, do not impact our disposition here. No amendments were made to § 1173 in 2002 or 2003 by the Legislature.

(A.H.), who was approximately eleven (11) years old.[4] Respondent's criminal behavior began because he became obsessed with R.H. and the criminal activity continued until approximately July 2000 when he was arrested. The pre-sentence investigation report in the criminal case (submitted to us in this matter by respondent), plainly indicates that respondent knew the wrongfulness of his misconduct.

¶ 6 The intended victim of the four attempted distribution counts to which respondent plead guilty was A. H., the minor daughter of T.H. The materials respondent was using to harass or attempt to harass his victims include his "writings", which he mainly placed on cards and/or postcards mailed to his victims. These materials include some of the most vile language imaginable. It is plain from our review of the pre-sentence investigation report that, at least, some of the materials were, at a minimum, impliedly threatening and caused fear in one or more of the victims. Further, in one case, in essence, the material accused T.H. of child molestation.[5] The only reason A.H. did not actually view respondent's abhorrent "writings" was that T.H. was able to intercept the mail at their residence before his daughter was exposed to it. As to the five distribution counts to which he plead guilty, one involved material sent to R. H., one to T. H., one to T. H.'s boss, and one each to two other women.

¶ 7 At a minimum, respondent's conduct violated Rule 8.4(b) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch.1, App. 3–A, which provides, "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." It also violated Rule 1.3 of the RGDP which provides:

> The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring dis-

credit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

¶ 8 In mitigation, respondent has, in effect, presented documentation that he was suffering from depression and/or obsessive/compulsive disorder when he committed these crimes. He has also presented letters from attorneys and others on his behalf that were earlier submitted to the criminal sentencing judge. Materials before us further indicate he underwent mental health treatment prior to his sentencing in the criminal case, both psychotherapy and medication for his mental health disorder(s), and, apparently, he continues to receive treatment while he is serving his prison term. Documentary material from a psychiatrist who has treated respondent, dated January 2003, in effect, indicates that with continued psychotherapy and proper medication, his mental health problems have been "cured".

¶ 9 Notwithstanding the materials presented by respondent in mitigation (which we have thoroughly reviewed), we conclude that disbarment is the appropriate discipline and that respondent's disbarment will best serve the welfare of the public and the integrity of the bar. Although we have recently pointed out that at times we have meted out discipline of less than disbarment where the issue of the appropriate discipline arose from a felony conviction [*State ex rel. Oklahoma Bar Ass'n v. Wyatt*, 2001 OK 70, ¶ 8, 32 P.3d 858, 859–860—the lawyer in *Wyatt* was disbarred after his conviction of the crime of manslaughter in the first degree], the nature of the crimes in this matter lead us to conclude that respondent must be disbarred. The most egregious transgression(s), in our view, attempted to envelope an innocent minor in his obsessive scheme of relentless harassment. The conduct involved multiple victims and occurred over a lengthy period of time. Respondent's overall conduct displayed a

---

**4.** No purpose would be served by setting forth the names of the victims in this opinion and we, therefore, decline to set out their names.

**5.** One of the attempted distribution counts to which respondent plead guilty involved mailing an admittedly obscene picture or photograph to A. H., T. H.'s minor daughter.

complete abdication of judgment, even though respondent knew the wrongfulness of his actions. In view of our responsibility to protect the public and to preserve the trust and confidence in those individuals who are licensed by this Court as legal practitioners, and considering the nature of these crimes, disbarment is warranted.

¶ 10 IT IS ORDERED THAT RESPON-DENT, STEPHEN FARRIS SHANBOUR IS DISBARRED AND HIS NAME IS STRICKEN FROM THE ROLL OF AT-TORNEYS, THE DISBARMENT TO BE EFFECTIVE FROM THE DATE RE-SPONDENT WAS SUSPENDED BY THIS COURT'S JANUARY 27, 2003 ORDER.

¶ 11 ALL JUSTICES CONCUR.