OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
2014 OK 1
318 P.3d 1114
Case Number: SCBD-5775; 6009
Decided: 01/14/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 1, 318 P.3d 1114

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, 
Complainant,
v.
TOM J. WILCOX, Respondent.

ORIGINAL PROCEEDINGS FOR DISCIPLINE

¶0 This opinion resolves pending Rule 6 and Rule 7 proceedings in which 
Thomas Joseph Wilcox is the Respondent. The Rule 6 proceeding arose out of 
Respondent's representation of a client during a workers' compensation case. The 
Rule 7 proceeding arose when Respondent was convicted of the misdemeanor crime 
of stalking, in violation of 21 O.S. 
§1173(A). After a de novo examination of the record, we order the Respondent 
be disbarred, and that his name be stricken from the roll of attorneys, 
effective from June 30, 2011, the date of his interim suspension.

RESPONDENT DISBARRED AND HIS NAME IS STRICKEN FROM THE ROLL 
OF ATTORNEYS, THE DISBARMENT TO BE EFFECTIVE FROM THE DATE RESPONDENT WAS 
SUSPENDED BY THIS COURT'S JUNE 30, 2011 ORDER; COSTS IMPOSED.

Gina L. Hendryx, General Counsel, and Stephen L. Sullins, Oklahoma Bar 
Association, Oklahoma City, Oklahoma, for Complainant.
Thomas Joseph Wilcox, 
Clinton, Oklahoma, pro se.
Lou Keel, Oklahoma City, Oklahoma, for 
Respondent.


COMBS, J.: 
¶1 Thomas Joseph Wilcox (hereinafter, Wilcox), OBA No. 10153, was admitted to 
practice law in the State of Oklahoma on April 22, 1983. Wilcox is currently 
suspended re: SCBD 5775 pursuant to Rule 7.3 of the Rules Governing Disciplinary 
Proceedings (RGDP), 5 O.S. Supp. 2007 Ch. 1, App. 1-A by order of this Court in 
State of Oklahoma Bar Ass'n v. Wilcox, 2011 OK 70, 261 P.3d 605. There are two pending 
matters concerning Wilcox which need to be resolved. The first, SCBD 6009, 
concerns a complaint brought by the Oklahoma Bar Association pursuant to Rule 6 
of the RGDP asserting the Wilcox violated provisions of the Oklahoma Rules of 
Professional Conduct (ORPC) during the course of his representation of a 
particular client during a workers' compensation matter. The second, SCBD 5775, 
was commenced pursuant to Rule 7 of the RGDP and concerns Wilcox's criminal 
conviction for the misdemeanor crime of stalking, in violation of 21 O.S. §1173(A). These matters were 
previously joined for the purpose of holding a hearing before a trial panel of 
the Professional Responsibility Tribunal (PRT), and in the interest of judicial 
economy are now resolved by a single opinion of the Court.
JURISDICTION AND STANDARD OF REVIEW
¶2 In Oklahoma, the regulation of licensure, ethics, and discipline of legal 
practitioners is a non-delegable, constitutional responsibility of this Court. 
State ex rel. Oklahoma Bar Ass'n v. McArthur, 2013 OK 73, ¶4, ---P.3d----; 
State ex rel. Oklahoma Bar Ass'n v. Albert, 2007 OK 31, ¶11, 163 P.3d 527. In disciplinary 
proceedings this Court acts as a licensing court in the exercise of our 
exclusive original jurisdiction. State ex rel. Oklahoma Bar Ass'n v. 
Garrett, 2005 OK 91, ¶3, 127 P.3d 600; State ex rel. 
Oklahoma Bar Ass'n v. Taylor, 2003 OK 56, ¶21, 71 P.3d 18. This Court conducts a 
de novo review of the record in order to determine if misconduct has occurred 
and what discipline is appropriate. McArthur, 2013 OK 73, ¶4; Garrett, 2005 OK 91, ¶3. Before this Court 
may impose discipline upon an attorney, the charges must be established by clear 
and convincing evidence. State ex rel. Oklahoma Bar Ass'n v. Miller, 2013 OK 49, ¶10, 309 P.3d 108; 
State ex rel. Oklahoma Bar Ass'n v. Wolfe, 1997 OK 47, ¶11, 937 P.2d 988. To make such a 
determination, this Court must be presented with a record sufficient to permit 
an independent, on-the-record review for the crafting of appropriate discipline. 
State ex rel. Oklahoma Bar Ass'n v. McCoy, 2010 OK 67, ¶6, 240 P.3d 675; State ex rel. 
Oklahoma Bar Ass'n v. Schraeder, 2002 OK 51, ¶6, 51 P.3d 570. It is the view of this 
Court that the record before us is sufficient to make such a determination.
I. 
PRIOR DISCIPLINARY HISTORY
¶3 This is not the first time that Wilcox has been the subject of 
disciplinary proceedings before this Court for violations of the ORPC, and a 
preliminary examination of his disciplinary history is necessary at this 
juncture because some of the underlying facts are directly related to the 
matters currently before this Court. Wilcox was first subjected to discipline by 
this Court in State v. Wilcox (hereinafter Wilcox I), 1997 OK 87, 942 P.2d 205. The genesis of the 
proceeding occurred when a clinic in Oklahoma complained to the OBA after it had 
received six checks drawn on Wilcox's trust account which were returned for 
insufficient funds. Wilcox I, 1997 OK 87, ¶3. In its complaint, 
the OBA alleged that Wilcox violated rules 1.15 and 8.4 of the ORPC, 5 O.S. 
1991, Ch. 1, App. 3A, and Rules 1.4 and 5.2 of the RGDP, 5 O.S. 1991, Ch. 1, 
App. 1-A. Wilcox I, 1997 OK 
87, ¶1.
¶4 This Court excluded some evidence after making a determination that the 
PRT improperly coerced Wilcox's testimony, after he had asserted the protection 
of Rule 6.11(d) of the RGDP. Wilcox I, 1997 OK 87, ¶20. After considering 
the remaining evidence, this Court determined that Wilcox had either commingled 
trust account funds or mishandled his clients' funds. The Court also determined 
that an endorsement on a settlement check was unauthorized. As a result, the 
Court determined clear and convincing evidence showed that Wilcox violated Rules 
1.15 and 8.4 of the ORPC and Rule 1.4 of the RGDP. Wilcox I, 1997 OK 87, ¶26. This Court 
suspended Wilcox from the practice of law for one year, and imposed costs. 
Wilcox I, 1997 OK 87, 
¶29.
¶5 Wilcox was subjected to discipline a second time by this Court in State 
ex rel. Oklahoma Bar Ass'n v. Wilcox (hereinafter Wilcox II), 2009 OK 81, 227 P.3d 642. The OBA initiated 
proceedings under Rule 6 of the ORPC, alleging twelve different counts of 
misconduct and recommending a private reprimand. Wilcox II, 2009 OK 81, ¶1. The Professional 
Responsibility Tribunal found generally that Wilcox violated the ORPC and 
recommended a public reprimand and one-year probation. Wilcox II, 2009 OK 81, ¶1. After de novo 
review, this Court determined that Wilcox had violated Rules 1.15(b), 1.16(d), 
and 8.2(a) of the 2001 ORPC and Rule 5.2 of the 2001 RGDP. Wilcox II, 2009 OK 81, ¶70. This Court ordered 
a public reprimand, but declined to impose costs on Wilcox for multiple reasons, 
including unjustified delay on the part of the OBA and failure on its part to 
prove by clear and convincing evidence the majority of the charges it levied 
against Wilcox. Wilcox II, 2009 OK 81, ¶69-70.
¶6 One of the violations this Court disciplined Wilcox for in Wilcox 
II is particularly relevant to Wilcox's criminal conviction for stalking 
that is the subject of State ex rel. Oklahoma Bar Ass'n v. Wilcox, 
SCBD 5775, the current Rule 7 proceeding involving Wilcox that is now before 
this Court and discussed infra. In Wilcox II, this Court determined that 
Wilcox violated Rule 8.2(a) of the ORPC, which prohibits a lawyer from making a 
false statement about a judicial candidate with knowledge or with reckless 
disregard of the statement's truth. Wilcox II, 2009 OK 81, ¶59. In a letter 
opposing a candidate for Associate District Judge of Dewey County, Wilcox called 
into question the candidate's ethics because the candidate filed a campaign form 
after the deadline.[1] Wilcox II, 2009 OK 81, ¶58. Wilcox also 
asserted the candidate had terminal cancer, and while it was true that the 
candidate had cancer, it was not true that the cancer was terminal. Wilcox 
II, 2009 OK 81, ¶58. Wilcox 
sent out this letter to voters less than one week before the election. Wilcox 
II, 2009 OK 81, ¶58. The 
judicial candidate in question was Rick Bozarth, then (and currently) the 
husband of Taunia Bozarth, the victim of Wilcox's stalking conviction discussed 
infra.
¶7An order of suspension was also issued for Wilcox by this Court on June 20, 
2013, due to Wilcox's failure to pay bar dues for the 2013 calendar year. 
Matter of Suspension of Members of the Oklahoma Bar Association for 
Nonpayment of 2013 Dues, 2013 OK 
46.
II. 
STATE OF OKLAHOMA EX REL. OKLAHOMA BAR ASSOCIATION v. THOMAS 
J. WILCOX, SCBD 6009 - RULE 6
¶8 On May 6, 2013, The OBA filed a Complaint against Wilcox pursuant to Rule 
6 of the ORPC, 5 O.S. Supp. 2008, Ch. 1, App. 3-A. The OBA alleged that in the 
course of representing a particular client, Darlene Faye Love (hereinafter, 
Love), Wilcox committed acts constituting professional misconduct in violation 
of the ORPC, 5 O.S. 2001, Ch. 1, App. 3-A; the ORPC, 5 O.S. Supp. 2008, Ch. 1, 
App. 3-A; and the RGDP, 5 O.S. 2001, Ch. 1, App. 1-A. Specifically, the OBA 
asserts Wilcox violated Rules 1.1, 1.3, 1.8(e), 1.15, 3.3(a)(3), and 8.4(c) of 
the ORPC and Rule 1.3 of the RGDP. The OBA also sought enhancement of discipline 
in its complaint, based upon prior disciplinary actions taken against Wilcox, 
discussed briefly supra.
¶9 On May 29, 2013, this Court granted the OBA's motion for joinder for the 
limited purpose of holding the hearing before the PRT, in the interest of 
judicial economy. The hearing before the PRT occurred on August 29, 2013, and 
September 3, 2013. The Trial Panel filed its Report concerning both the Rule 7 
and Rule 6 matters with this Court on October 4, 2013.
A. Facts and Procedural Background
¶10 Wilcox's client, Love, suffered an injury while working as a practical 
nurse at the psychiatric ward at OU Medical on July 13, 2003. Transcript of the 
Hearing before the Professional Responsibility Tribunal (hereinafter, 
Transcript), p. 253. She discovered a patient hanging from a shower stall, and 
when she attempted to aid him suffered an injury to her back. Transcript, p. 
253. Love reported the injury to her employer and began receiving temporary 
total disability benefits. Transcript, p. 254.
¶11 Upon discovering that she might need surgery, Love considered hiring an 
attorney and eventually hired Wilcox. Transcript, p. 254-55. Pursuant to an 
agreement for attorney fees signed by Love and Wilcox, it appears she retained 
his service in early December of 2003. Complainant's Exhibit 9. While 
represented by Wilcox, Love had two more surgeries and travelled regularly from 
her home in Woodward to Oklahoma City for the purpose of seeing physicians. 
Transcript, p. 257-58.
¶12 Wilcox continued to represent Love between 2003 and 2007. On June 4, 
2007, Wilcox filed a motion to set Love's workers' compensation case for trial 
on the issue of permanent partial disability. Complainant's Exhibit 18. The 
final hearing was set for August 8, 2007. The day prior to the hearing, Love 
learned that Wilcox had suffered a stroke. Transcript, pp. 269-70. The record 
indicates that Wilcox was admitted to the hospital on July 27, 2007, and 
discharged on August 11, 2007. Complainant's Exhibit 22.
¶13 Upon learning of Wilcox's illness and inability to appear at the final 
hearing, Love obtained the services of attorney Joseph Talbot in August 2007, 
who took over representation of her in her workers' compensation case. Talbot 
obtained a continuance of Love's trial and represented her through the remainder 
of the workers' compensation proceedings. Transcript, pp. 185-86. During the 
course of his representation of Love, Talbot became aware that Wilcox, during 
the time he was representing Love, may have violated provisions of the ORPC, and 
he reported his concerns to the OBA. Transcript, pp. 183-84; Complainant's 
Exhibit 8.
¶14 In September of 2007, after Talbot had taken over Love's case, Wilcox 
filed a notice of attorney's lien. After Talbot settled the case, Wilcox 
indicated he was seeking reimbursement for both travel expenses he had advanced 
to Love, as well as medical expenses he incurred for three physicians. Judge 
Farrar of the Workers' Compensation Court held a hearing on the division of 
attorney fees and costs between Wilcox and Talbot on September 22, 2011, 
included in the record as Complainant's Exhibit 8. This was also the genesis of 
the OBA's Rule 6 Complaint against Wilcox, as Talbot forwarded them the 
transcript, concerned that Wilcox had admitted to violating the ORPC.
¶15 During the September 22, 2011, hearing the Workers' Compensation Court 
was highly critical of Wilcox's failure to seek reimbursement on Love's behalf 
from the insurer, for expenses incurred travelling to and from medical 
appointments. In an order issued on December 19, 2011, the Workers' Compensation 
Court determined that: 1) Wilcox advanced funds to Love in violation of Rule 1.8 
of the ORPC; 2) Wilcox was not, at the time of the order, entitled to 
reimbursement of those funds; and 3) that Wilcox failed to prove he had incurred 
expenses with two of Love's treating physicians.[2] Wilcox appealed the decision of the 
Workers' Compensation Court, and the decision was affirmed by the Oklahoma Court 
of Civil Appeals, Division IV, in an unpublished opinion: In Re Claim of: 
Darlene Faye Love v. Robinson Medical Resources Group et al. v. Daniel Talbot v. 
Tom Wilcox, Case No. 110,271, Complainant's Exhibit 12.
¶16 The issue of Wilcox's lien came before the Workers' Compensation Court a 
second time, on March 26, 2013, after Wilcox apparently became aware of a second 
settlement in Love's case. Complainant's Exhibit 13. In an order on March 28, 
the Workers' Compensation Court determined that 1) Wilcox's lien had been 
satisfied and was extinguished; and 2) that Wilcox was ordered to reimburse Love 
$2,640.00 in previously awarded temporary total disability benefits that Wilcox 
had withheld. Wilcox has also appealed this determination, which is currently 
pending before the Court of Civil Appeals, Case No. 111,682.
B. Analysis
1) Rules 1.1 and 1.3 of the ORPC
¶17 The OBA alleges that Wilcox violated Rules 1.1 and 1.3 of the ORPC during 
the course of his representation of Darlene Love. Rule 1.1 of the ORPC, 5 O.S. 
2001, Ch. 1, App. 3-A provides:

 
 A lawyer shall provide competent representation to a client. Competent 
 representation requires the legal knowledge, skill, thoroughness, and 
 preparation reasonably necessary for the 
representation.
Rule 1.3 of the ORPC, 5. O.S. 2001, Ch. 1, App. 3-A provides:

 
 A lawyer shall act with reasonable diligence and promptness in 
 representing a client.
¶18 In its complaint, the OBA alleges that Love made numerous out of town 
trips to receive medical treatment, and was therefore entitled to mileage 
reimbursement from her insurance carrier, but that Wilcox "failed to submit 
Love's mileage claims to the insurance carrier." Complaint, ¶6. In its Brief in 
Chief, the OBA also asserts that:

 
 
 
 The evidence indicates that Respondent did not track, document, or 
 monitor Love's mileage claims during the time he represented her. It is 
 uncontested that Respondent did not submit mileage claims during the 
 months or years as they were incurred. Respondent testified that his 
 practice was to submit the mileage reimbursement claim towards the end 
 of the case. He said that Love verbally agreed to 
 same.
Complainant's Brief in Chief, p. 6.
¶19 The PRT determined that the OBA failed to show by clear and convincing 
evidence that Wilcox violated either Rule 1.1 or 1.3. After reviewing the 
evidence, we disagree with the PRT. It is undisputed from the record that Wilcox 
did not request reimbursement for Love's travel expenses as they were incurred. 
The OBA asserts that because Love was broke and needed those reimbursements, and 
the lack of them presented a significant hardship for her, Wilcox violated Rules 
1.1 and 1.3 by not seeking reimbursements at earlier intervals, as was 
apparently the practice of Talbot, who took over representation of Love after 
Wilcox.
¶20 The PRT determined that while requesting reimbursement earlier over the 
course of the representation might have been the better practice, Wilcox argued 
he made an agreement with Love to advance her funds as needed to cover travel 
expenses, and that he would be repaid at the end of the case. Love testified 
that she did not make that agreement with Wilcox, but the record does indicate 
that she accepted funds from Wilcox given to her for that purpose.
¶21 As the PRT correctly points out, it would make little sense for Wilcox to 
have advanced Love funds without an agreement that he would ultimately be 
reimbursed for them, and it would make equally little sense for Love to assume 
the money was a gift she had no obligation to repay. It is clear from the record 
that: 1) Wilcox did not seek reimbursement for Love's travel expenses from the 
insurer when he probably should have; 2) instead he advanced funds to Love as 
needed to cover her travel expenses; and 3) there is conflicting evidence 
concerning whether Wilcox and Love agreed to this arrangement.
¶22 However, the record also indicates that Wilcox's file, when it was 
eventually turned over to Talbot after Talbot issued a subpoena on December 18, 
2007, did not contain complete medical records for Love sufficient to submit a 
claim for reimbursement. Transcript, pp. 202-203. Talbot testified before the 
PRT that he had to request medical records from providers because he was not 
able to obtain the materials from Wilcox. Transcript, p. 202. The record before 
us indicates that not only did Wilcox not submit timely requests for mileage 
reimbursement during his representation of Love, he was both unprepared to do so 
at the end of his representation of her, and lack of diligence impacted Talbot's 
ability to obtain reimbursement for Love after he took over the representation 
subsequent to Wilcox's illness.
¶23 Wilcox admits that he did not document the mileage that was incurred by 
Love over the course of his representation. During the hearing before the 
Professional Responsibility Tribunal, Wilcox was asked:

 
 Q: But I'm looking for an entry where you specifically say, I spent three 
 hours, four hours, five hours documenting the mileage that was incurred by 
 Ms. Love for her treatment during the time that you represented her from 
 2003 until 2007?
 A: I didn't, because it wasn't done at the - at any point in my 
 representation because I got sick that last week or two.
 Transcript, p. 303
In a hearing before the Workers' Compensation Court on September 22, 2011, 
Wilcox testified that he failed to seek reimbursement for Love because he did 
not have time:

 
 THE COURT: While you're thumbing through figuring out your questions, I 
 have a question.
 Why did you keep the Claimant's -- five of the Claimant's TTD checks to 
 reimburse yourself for so-called mileage advancements? Why didn't you just 
 go ahead and just ask the insurance company to pay for those mileage 
 advancements?
 THE WITNESS: Because usually what would happen I would get a call a day 
 or two before her trip to see a doctor. She would tell me, Mr. Wilcox, I 
 need money to go see my doctor. And usually I would have to get the check in 
 the mail that day, the money order in the mail that day, to get it to her so 
 that she would have it to her before she would see her doctors. And there 
 wasn't enough time to file a request for that.
 THE COURT: Why didn't you file that after the fact? You had four years of 
 allegedly providing those advancements, which are specifically prohibited by 
 our Rules of Professional Conduct. But nonetheless, you had plenty of time 
 to ask for reimbursements for those. Why did you never do that?
 THE WITNESS: Judge, I have so much time in my life along with Ms. Love 
 and the rest of my clients I have --
 ..
 THE COURT: Just tell me why you didn't apply.
 THE WITNESS: Because I didn't have the time to do it. And she would call 
 me usually two or three days before.
 Complainant's Exhibit 8, pp. 88-89.
¶24 During this time period, it appears from the record that Wilcox was aware 
of Love's precarious financial situation. Transcript, p. 343. He was in fact 
loaning her money for transportation to and from medical appointments because 
she was unable to afford it, and at the same time made no effort to obtain 
reimbursement, which he acknowledges he knew Love was entitled to, from the 
insurer. Transcript, pp. 291-92. We hold, therefore, that clear and convincing 
evidence in the record exists to show that Wilcox violated Rules 1.1 and 1.3 of 
the ORPC by failing to provide competent representation, with reasonable 
diligence and promptness, to Love over the course of the representation.
2) Rule 1.8(e) of the ORPC
¶25 The OBA also asserted that Wilcox violated Rule 1.8(e) of the ORPC by 
advancing funds to Love for the purpose of enabling her to travel to medical 
appointments. The PRT determined that the OBA demonstrated by clear and 
convincing evidence that Wilcox did violate Rule 1.8(e). We agree with the 
determination of the PRT, and hold that Wilcox's advancement of funds to Love to 
enable her to travel to medical appointments was a violation of Rule 1.8(e). The 
version of the rule in effect at the time of Wilcox's alleged violations is Rule 
1.8(e), ORPC, 5 O.S. 2001, Ch. 1, App. 3-A, and provides:

 
 A lawyer shall not provide financial assistance to a client in connection 
 with pending or contemplated litigation, except that a lawyer may advance 
 court costs and expenses of litigation, the repayment which may be 
 contingent on the outcome of the matter.[3]
¶26 For the purposes of Rule 1.8(e), travel expenses to and from workers' 
compensation appointments are not court costs or expenses of litigation. Wilcox 
testified that he advanced funds to Love repeatedly to cover her travel to 
medical appointments. Despite being generally aware of Rule 1.8(e), respondent 
testified that he made no effort to determine if his loans to Love might be in 
violation of the rule. Transcript, pp. 418-21.
¶27 Wilcox was informed back in 2006 that his practice of advancing money to 
clients for transportation to medical appointments violated Rule 1.8 in an order 
by the Workers' Compensation Court in a different matter, In Re Claim of: 
Leroy James Sadler, No. 2002-16046Y, Complainant's Exhibit 15. The Court 
held that: "attorney Wilcox was prohibited by the ethics code from loaning the 
claimant funds for mileage and medications. These are not costs of litigation." 
Complainant's Exhibit 15, p. 2; Transcript, p. 381. Wilcox testified that after 
that order was affirmed on appeal, he changed his practices. Transcript, p. 381. 
However, Wilcox acknowledged that he advanced money to Love after the Order in 
the Sadler case, while the appeal was pending:

 
 Q: Do you agree with me that that order, October 3rd, 2006, was prior to 
 the two checks you sent Darlene Love for $750 each?
 A: That order pertained to Leroy Sadler's case.
 Q: But my question is, this order telling you it's improper to advance 
 mileage costs in a workers' compensation case came out before you sent those 
 two money orders to Ms. Love in 2007?
 A: That's right, in regard to Leroy Sadler.
 Transcript, p. 383.
¶28 Despite a prior determination by the Worker's Compensation Court that 
doing so was a violation of the ORPC, Wilcox advanced funds to Love to cover 
travel to her medical examinations rather than seek timely reimbursement for her 
from the insurer. His justification appears to be that the Order of the Workers' 
Compensation Court was issued in another case, not Love's, but this does not 
change the fact that he was put on notice that his conduct might violate the 
rules and yet made no effort to change his actions or determine whether he was 
complying with the requirements of the ORPC.
¶29 Wilcox also argues, as discussed above, that he lacked the time to seek 
reimbursement and that because Love would call him a few days before each 
appointment needing money, his advancement of funds was necessary for her to 
receive treatment. However, in State ex rel. Oklahoma Bar Ass'n v. 
Smolen, 2000 OK 95, ¶¶14-17 17 P.3d 456, this Court declined to 
carve ad hoc exceptions into Rule 1.8(e) based upon an attorney's good 
intent or humanitarian purpose. The Court in Smolen detailed the history 
and reasoning behind Rule 1.8(e):

 
 [t]he rule against attorneys providing financial assistance to clients 
 for living expenses is based on the common-law prohibitions against practice 
 of champerty and maintenance. The evils associated with champerty and 
 maintenance intended to be prevented by rule 1.8(e)'s prohibition are: (1) 
 clients selecting a lawyer based on improper factors, and (2) conflicts of 
 interest, including compromising a lawyer's independent judgment in the case 
 and creating the potentially conflicting roles of the lawyer as both lawyer 
 and creditor with divergent interests. (Internal footnotes 
 omitted).
Smolen, 2000 OK 95, 
¶15.
The Court in Smolen further stated that "a rule allowing lawyers to 
make loans to clients for reasons other that [sic] advancing litigation expenses 
and court costs is ill-advised", in part because of the potentially inherent 
abuses in allowing lawyers to do so. Smolen, 2000 OK 95, ¶21. We agree, and hold 
that by advancing funds to Love for travel to medical appointments related to 
her injury, Wilcox violated Rule 1.8(e) of the ORPC.
3) Rule 1.15 of the ORPC 
¶30 The OBA also asserts that Wilcox violated Rule 1.15 when he failed to 
safekeep client funds, and caused client funds to be comingled with his mother's 
funds, by endorsing Love's name on her temporary total disability checks and 
depositing them into his mother's bank account. Rule 1.15, ORPC, 5 O.S. Supp. 
2001, Ch. 1, App. 3-A provides in pertinent part:

 
 (a) A lawyer shall hold property of clients or third persons that is in a 
 lawyer's possession in connection with a representation separate from the 
 lawyer's own property. Funds shall be kept in a separate account maintained 
 in the state where the lawyer's office is situated, or elsewhere with the 
 written consent of the client or third person. Other property shall be 
 identified as such and appropriately safeguarded. Complete records of such 
 account funds and other property shall be kept by the lawyer and shall be 
 preserved for a period of five years after termination of the 
 representation.
 (b) Upon receiving funds or other property in which a client or third 
 person has an interest, a lawyer shall promptly notify the client or third 
 person. Except as stated in this Rule or otherwise permitted by law or by 
 agreement with the client, a lawyer shall promptly deliver to the client or 
 third person any funds or other property that the client or third person is 
 entitled to receive and, upon request by the client or third person, shall 
 promptly render a full accounting regarding such property.
 (c) When in the course of representation a lawyer is in possession of 
 property in which both the lawyer and another person claim interests, the 
 property shall be kept separate by the lawyer until there is an accounting 
 and severance of their interests. If a dispute arises concerning their 
 respective interests, the portion in dispute shall be kept separate by the 
 lawyer until the dispute is resolved
¶31 The PRT determined that the OBA did not demonstrate by clear and 
convincing evidence that Wilcox violated Rule 1.15 by endorsing certain 
temporary total disability checks and depositing them into his mother's personal 
checking account, for much the same reason it determined there was not clear and 
convincing evidence that Wilcox violated Rules 1.1 and 1.3 of the ORPC. 
According to the record, Wilcox testified that he endorsed and cashed Love's 
temporary total disability checks and retained the funds with his client's 
permission, as reimbursement for the travel expenses he had loaned to her. Love, 
on the other hand, testified that she does not remember making that agreement, 
and testified that Wilcox was not authorized to sign her name, cash the checks, 
and retain the funds. Because it had doubts about Love's memory, the PRT did not 
find Love's testimony alone sufficient to serve as clear and convincing evidence 
that Wilcox violated the rule.
¶32 However, as the OBA points out, Wilcox not only endorsed and deposited 
some of Love's temporary total disability checks as reimbursement for the money 
he paid her for travel; he also afterward sought reimbursement for the same 
advancements in front of the Workers' Compensation Court. Complainant's Exhibit 
12. Specifically, in its Order Awarding Attorney Fees the Workers' Compensation 
Court determined that:

 
 Respondent/insurance carrier continued sending MR. WILCOX claimant's 
 temporary total disability checks for nine (9) weeks after claimant was 
 released. MR. WILCOX endorsed claimant's name to five (5) of those checks 
 without authorization and deposited them into his mother's account, claiming 
 he was reimbursing himself for monies advanced to claimant. However, he is 
 now seeking reimbursement for the same advancements. MR. WILCOX returned the 
 other four (4) temporary total disability checks to the insurance 
 carrier.
As the OBA correctly points out, the issue with Rule 1.15 is not whether 
Wilcox, in the end, might have been entitled to the monies as reimbursement. The 
issue is what he did with the money while his interest vs. Love's interest was 
in dispute.
¶33 This Court has specifically examined the application of Rule 1.15 to 
temporary total disability checks retained by an attorney previously, in one of 
Wilcox's prior disciplinary proceedings before this Court. In Wilcox II, 
2009 OK 81, ¶13-14, this Court 
stated:

 
 Rule 1.15(c) required: "When in the course of representation a lawyer is 
 in possession of property in which both the lawyer and another person claim 
 interests, the property shall be kept separate by the lawyer until there is 
 an accounting and severance of their interests." The Workers' 
 Compensation Court found that Respondent had a recognizable lien on the 
 workers' compensation proceeds, that the available funds were 
 insufficient to fully satisfy the competing liens, and that Respondent had 
 "advanced claimant sums in the amount of $704.61 for prescription medicine 
 and there [was] no evidence said amount was reimbursed by [Sadler]." The 
 same order also found that Respondent was entitled to $2,529.00 in attorney 
 fees. Under the Worker's Compensation Court's order, the total to which 
 Respondent had a claim from the funds represented by the checks was 
 $3,233.61. Contrary to the Worker's Compensation Court's order, the OBA 
 takes the position in its brief that Respondent had no claim to the funds 
 represented by the two TTD checks. The OBA did not provide clear and 
 convincing evidence that Respondent did not rightly claim an interest in the 
 funds represented by the two TTD checks.
 Having found that the OBA did not provide evidence that Respondent did 
 not rightly claim an interest in the funds represented by the two TTD 
 checks, we turn to Rule 1.5(c) to determine if he was required to hold them 
 in a trust account. While Rule 1.15(a) of both the 2001 and the 2008 ORPC 
 requires a lawyer to hold a client's funds in a trust account, there is no 
 such provision in Rule 1.15(c) of the 2001 ORPC, which deals specifically 
 with property in which the lawyer claims an interest. Rather, Rule 1.15(c) 
 of the 2001 ORPC required that client funds be kept separate from the 
 lawyer's. Further, the comments to Rule 1.15 of the 2001 ORPC, in effect at 
 the time of Respondent's alleged misconduct, provided: "If there is risk 
 that the client may divert the funds without paying the fee, the lawyer is 
 not required to remit the portion from which the fee is to be paid." Thus, 
 as we construe Rule 1.15 of the 2001 ORPC, Respondent was not specifically 
 required to remit the two TTD checks and was not required to hold them in a 
 trust account. In compliance with Rule 1.15(c) of the 2001 ORPC, 
 Respondent kept the two checks separate from his own property. Thus, we do 
 not find that the OBA proved by clear and convincing evidence that 
 Respondent violated Rule 1.15(c) of the 2001 ORPC. (Emphasis 
 added).
In contrast to the situation described above, in this instance: 1) the 
Worker's Compensation Court determined that Wilcox did not have a valid 
claim on the funds; and 2) while Wilcox did keep the checks separate from his 
own property, he deposited them in his mother's checking account, and those 
funds were depleted within one month of deposit. Complainant's Exhibit 10. It is 
our determination that Wilcox violated Rule 1.15 of the ORPC by failing to keep 
safe client funds.
4. Rule 8.4(c) of the ORPC
¶34 The OBA also asserts that Wilcox violated Rule 8.4(c) of the ORPC when he 
wrongly endorsed his client's name on her temporary total disability checks, 
failed to inform her he was keeping the checks, and made misrepresentations to 
the Workers' Compensation Court concerning his payments to Love's treating 
physicians. Rule 8.4(c) was not altered by the January 1, 2008 amendments to the 
ORPC, and provides:

 
 It is professional misconduct for a lawyer to:
 .
 (c) engage in conduct involving dishonesty, fraud, deceit or 
 misrepresentation.
¶35 We agree with the PRT that the OBA has not shown by clear and convincing 
evidence that Wilcox violated Rule 8.4(c). Rule 8.4(c) has an intent 
requirement. This Court has previously stated, in State ex rel. Oklahoma Bar 
Ass'n v. Besly, 2006 OK 18, 
¶42, 136 P.3d 590, that 
conduct:

 
 does not rise to a Rule 8.4(c) violation, unless the record clearly and 
 convincingly shows respondent had an intent or purpose to deceive when she 
 made the representations.
The declarant must have had an underlying motive, such as bad or evil intent, 
for making the statement, and this requirement is not satisfied by negligent 
misrepresentation or failure to apprise another of relevant information. 
Besly, 2006 OK 18, ¶43; 
State ex rel. Oklahoma Bar Ass'n v. Taylor, 2003 OK 56, ¶17, 71 P.3d 18. An examination of the 
record reveals that Wilcox engaged in, at best, questionable recordkeeping and 
accounting practices, but there is not clear and convincing evidence that he 
possessed an intent to deceive either Love or the Workers' Compensation 
Court.
 
5. Rule 3.3(a)(3) of the ORPC 
¶36 The OBA also asserts in its complaint that Wilcox violated Rule 3.3(a)(3) 
of the ORPC. Rule 3.3 of the Oklahoma Rules of Professional Conduct, 5 O.S. 
Supp. 2008, Ch. 1, App. 3-A, provides in pertinent part:

 
 (a) A lawyer shall not knowingly:
 .
 (3) offer evidence that the lawyer knows to be false. If a lawyer, the 
 lawyer's client, or a witness called by the lawyer, has offered material 
 evidence and the lawyer comes to know of its falsity, the lawyer shall take 
 reasonable remedial measures, including, if necessary, disclosure to the 
 tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably 
 believes is false.
The thrust of the OBA's claim is that Wilcox violated this rule when he 
asserted to the Workers' Compensation Court that: 1) he had advanced travel 
expenses to Love; and 2) represented to the Workers' Compensation Court that he 
had paid medical expenses to three of Love's treating physicians.
¶37 The PRT determined that the OBA failed to demonstrate by clear and 
convincing evidence that Wilcox violated Rule 3.3(a)(3). An examination of the 
record reveals that the PRT's determination was correct. In its report, the PRT 
actually hits the nail on the head as to why. It determined: "[g]iven Ms. Love's 
testimony, while respondent's bookkeeping and accounting practices are obviously 
extremely poor (or completely lacking), there is no evidence suggesting 
Respondent's request at the fee hearing for reimbursement of funds he advanced 
Ms. Love was knowingly false." Report of the Professional Responsibility 
Tribunal, p. 15. The PRT is correct that failure to provide sufficient evidence 
to the Workers' Compensation Court to back up his claims is not the same thing 
as offering evidence that Wilcox knew to be false. Wilcox's poor bookkeeping 
practices indicate the he may himself not have known what reimbursement he was 
supposedly owed or entitled to, and while that is in its own way a source of 
concern, it is not part of the disciplinary proceedings before this Court and 
does not prove by clear and convincing evidence that Wilcox offered evidence to 
the Workers' Compensation Court he knew to be false.
6. Rule 1.3 of the RGDP
¶38 The OBA also asserted in its complaint that Wilcox violated Rule 1.3 of 
the RGDP, 5 O.S. 2001, Ch. 1, App. 1-A. The rule provides:

 
 The commission by any lawyer of any act contrary to prescribed standards 
 of conduct, whether in the course of his professional capacity, or 
 otherwise, which act would reasonably be found to bring discredit upon the 
 legal profession, shall be grounds for disciplinary action, whether or not 
 the act is a felony or misdemeanor, or a crime at all. Conviction in a 
 criminal proceeding is not a condition precedent to the imposition of 
 discipline.
The PRT determined that Wilcox's violation of Rule 1.8(e) of the ORPC was not 
sufficient to support a finding that Wilcox violated Rule 1.3 of the RGDP, but 
determined that Wilcox violated this rule by way of his conviction for 
stalking.
¶39 As discussed above, Wilcox engaged in conduct that violated Rules 1.1, 
1.3, 1.8(e), and 1.15 of the ORPC. Over the course of his representation of 
Love, Wilcox failed to seek reimbursement for travel expenses to which she was 
entitled, and instead loaned her money himself. After doing so, he kept some of 
Love's TTD checks as reimbursement, which he endorsed and deposited into his 
Mother's checking account, failing to safe keep his client's funds until any 
dispute over who was entitled to them could be resolved. Though Wilcox argued he 
planned to seek reimbursement from the insurer on Love's behalf, the record 
reveals he was in no way prepared to properly do so.
¶40 By committing multiple violations of the ORPC, Wilcox has once again 
brought discredit upon the legal profession and committed acts contrary to 
prescribed standards of conduct in the course of his professional capacity. In 
doing so he has made himself subject to discipline pursuant to Rule 1.3 of the 
RGDP. Further, we agree with the determination of the PRT that Wilcox also 
subjected himself to discipline under this rule by stalking the wife of a 
judicial officer, discussed in detail below.
III.
OKLAHOMA BAR ASSOCIATION v. TOM J. WILCOX, SCBD 5775 - RULE 
7
A. Facts and Procedural Background
¶41 On April 2, 2011, Wilcox was found guilty of one count of stalking in 
violation of 21 O.S. §1173(A), in 
State of Oklahoma v. Wilcox, District Court of Dewey County, No. 
CM-2009-206. Wilcox was sentenced to six months in the Dewey County Jail, and 
ordered to pay a $1,000 fine. On June 27, 2011, this Court was notified of 
Wilcox's conviction by the OBA.
¶42 As a result of Wilcox's conviction, on June 30, 2011 this Court entered 
an Order of Immediate Suspension pursuant to Rule 7.3 of the RGDP, 5 O.S. Supp. 
2007 Ch. 1, App. 1-A, immediately suspending Wilcox from the practice of law 
until further order of this Court. State of Oklahoma ex rel. Oklahoma Bar 
Association v. Wilcox, 2011 OK 
70, 261 P.3d 605. Also 
pursuant to Rule 7.3, Wilcox was directed to show cause by July 11, 2011, why, 
if good cause is shown, the suspension should be set aside. On July 11, 2011, 
Wilcox filed a response to the show cause directive that good cause exists and 
that this Court's Order of Immediate Suspension should be set aside. This court 
entered an order denying Wilcox's request to set aside the Order of Immediate 
Suspension on July 14, 2011.
¶43 The Court of Criminal Appeals affirmed Wilcox's conviction by Summary 
Opinion on July 5, 2012. Thomas Joseph Wilcox v. The State of Oklahoma, 
No. M-2011-270. Pursuant to Rules 7.4 and 7.5 of the RGDP, 5 O.S. Supp. 2007 Ch. 
1, App. 1-A, on December 3, 2012, this Court issued an Order directing Wilcox to 
show cause, no later than December 21, 2012, why a final order of discipline 
should not be made. Wilcox timely responded on December 20, 2012, and requested 
a hearing pursuant to Rules 7.4 and 7.5 of the Rules Governing Disciplinary 
Proceedings, 5 O.S. Supp. 2007 Ch. 1, App. 1-A, for the purpose of showing cause 
in mitigation of the discipline to be imposed upon him.
¶44 On December 27, 2012, this Court granted Wilcox's request for a hearing 
on the limited scope of mitigation and recommendation of discipline to be 
imposed, and directed the PRT to hold the hearing within thirty days. The 
hearing was continued more than once, and on May 10, 2013, the OBA moved to join 
or consolidate this matter with its Rule 6 complaint against Wilcox, discussed 
supra, alleging specific acts of professional misconduct pursuant to Rule 6 of 
the RGDP, 5 O.S. Supp. 2007 Ch. 1, App. 1-A, in State of Oklahoma ex rel. 
Oklahoma Bar Association v. Thomas J. Wilcox, SCBD 6009. The matters were 
joined for the purpose of the hearing.
B. Analysis
¶45 In State ex rel. Oklahoma Bar Ass'n v. Armstrong, 1990 OK 9, 791 P.2d 815, this Court recognized 
that not every criminal conviction, by itself, demonstrates a lawyer's unfitness 
to practice law. We stated:

 
 [a]lthough a lawyer is personally answerable to the entire criminal law, 
 a lawyer should be professionally answerable only for offenses that indicate 
 lack of those characteristics relevant to law practice. Offenses involving 
 violence, dishonesty or breach of trust, or serious interference with the 
 administration of justice are in that category. A pattern of repeated 
 offenses, even ones of minor significance when considered separately, can 
 indicate indifference to legal obligation.
 Armstrong, 1990 OK 
 9, ¶8 (quoting Comment, Rule 8.4 of the Rules of Professional Conduct, 5 
 O.S. Supp. 1988 Ch. 1, App. 3-A.).
Implicit in this Court's Order of Immediate Interim Suspension issued on June 
27, 2011, is a decision that Wilcox's conviction facially demonstrated his 
unfitness to practice law. State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶11, 304 P.3d 453. However, we will once 
again examine Wilcox's conduct to determine the appropriate final discipline. 
Cooly, 2013 OK 42, 
¶11.
¶46 At first glance, Wilcox's conviction appears relatively simple: on April 
1, 2011, Wilcox was convicted of stalking Taunia Bozarth, in violation of 21 O.S. §1173(A), which 
provides:

 
 A. Any person who willfully, maliciously, and repeatedly follows or 
 harasses another person in a manner that:
 
 
 1. Would cause a reasonable person or a member of the immediate 
 family of that person as defined in subsection F of this section to feel 
 frightened, intimidated, threatened, harassed, or molested; and
 2. Actually causes the person being followed or harassed to feel 
 terrorized, frightened, intimidated, threatened, harassed, or molested, 
 upon conviction, shall be guilty of the crime of stalking, which is a 
 misdemeanor punishable by imprisonment in a county jail for not more 
 than one (1) year or by a fine of not more than One Thousand Dollars 
 ($1,000.00), or by both such fine and 
 imprisonment.
Wilcox received a six-month sentence in the county jail, where he served 184 
days, and was ordered to pay a $1,000 fine. The individual Wilcox was convicted 
of stalking, Taunia Bozarth, was and remains the wife of Dewey County Associate 
District Judge Rick Bozarth. As mentioned above, Wilcox appealed his conviction, 
which was then affirmed by a summary opinion of the Court of Criminal Appeals on 
July 5, 2012.
¶47 This Court previously examined the appropriate discipline for an attorney 
convicted of stalking in violation of 21 O.S. §1173 in State ex rel. 
Oklahoma Bar Ass'n v. Shanbour, 2003 OK 116, 84 P.3d 107. In that disciplinary 
proceeding, we determined that an attorney's criminal conviction for one count 
of stalking in violation of 21 O.S. 
§1173 and nine felony counts of either distribution or attempted 
distribution of obscene or indecent material in violation of 21 O.S. §1021 warranted disbarment 
from the legal profession. Shanbour, 2003 OK 116, ¶0. In 
Shanbour, this court primarily emphasized the attorney's distribution of 
obscene materials to the minor child of his stalking victim in making a 
determination that disbarment was the appropriate discipline.
¶48 However, this Court also stressed the important considerations that it 
must take into account in this type of situation, stating:

 
 "In determining the proper discipline this Court compares the 
 circumstances of the involved case with those of similar previous 
 disciplinary cases involving other attorneys and we examine the respondent's 
 previous disciplinary record--both inquiries geared to determining how best 
 to serve the welfare of the public and the integrity of the bar. Meek, 
 supra, 895 P.2d at 700. Also, to arrive at appropriate discipline, a fit 
 factor to consider is the deterrent effect upon both the offending 
 respondent and other attorneys who might contemplate similar conduct in the 
 future. State ex rel. Oklahoma Bar Ass'n v. McMillian, 1989 OK 16, 770 P.2d 892, 899;State ex 
 rel. Oklahoma Bar Ass'n v. Hall, 1977 OK 117, 567 P.2d 975, 978. Mitigating 
 circumstances are also often considered when assessing the appropriate 
 measure of discipline. State ex rel. Oklahoma Bar Ass'n v. Thomas, 1995 OK 145, 911 P.2d 907, 913. Also, although 
 discipline should be administered fairly (i.e.evenhandedly), this Court has 
 recognized that the extent of discipline must be decided on a case-by-case 
 basis because each situation will usually involve different transgressions 
 and different mitigating circumstances. See State ex rel. Oklahoma Bar 
 Ass'n v. Rozin, 1991 OK 
 132, 824 P.2d 1127, 1130. 
 (Paragraph numbers omitted.)"
Shanbour, 2003 OK 116, 
¶4 (quoting State ex. rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, ¶¶ 4-6, 60 P.3d 1024).
Here, Wilcox stalked the wife of a judicial officer. The record shows he 
intimidated her, and she became afraid to drive into the Town of Seiling. She 
testified that she stopped going to the gym, playing golf, or grocery shopping 
in Seiling.
¶49 For the purposes of determining Wilcox's fitness to practice law, his 
conviction for stalking cannot be viewed in isolation. Wilcox has been 
previously subjected to discipline by this Court for, among other things, 
violating Rule 8.2 of the Oklahoma Rules of Professional Conduct, which 
prohibits a lawyer from making a false statement about a judicial candidate with 
knowledge or with reckless disregard of the statement's truth. Wilcox II, 
2009 OK 81, ¶58-59, 227 P.3d 642. The candidate in 
question was Taunia Bozarth's husband, Rick Bozarth, who is currently the 
Associate District Judge for Dewey County. Further, the record indicates that 
the first instance of stalking that gave rise to Wilcox's conviction was April 
20, 2009, which is the date of Wilcox's hearing before the PRT concerning his 
statements regarding Judge Bozarth during the campaign. Complainant's Exhibit 
7.
¶50 Concerning the gravity of Wilcox's actions, we find the PRT's language 
particularly apt: "[r]espect for judicial and quasi-judicial proceedings is the 
very foundation of the practice of law. Intentional intimidation of those 
involved in legal proceedings --or worse yet, victimizing their families--is 
serious indeed." Report of the PRT, p.28 By way of mitigation, Wilcox asserts 
long-standing bad blood and harassment between himself and other individuals in 
the City of Seiling, including Taunia Bozarth and Judge Bozarth, the Dewey 
County Sheriff, and police officers of the City of Seiling.
¶51 We agree with the PRT that bad blood and disagreement between individuals 
does not justify the crime of stalking. Further, the fact that Wilcox asserted 
he refrained from committing worse crimes, such as assault or verbally 
threatening Taunia Bozarth, hardly serves as evidence mitigating the crime of 
which Wilcox was convicted. Transcript, pp. 84-85.[4] Much of the testimony offered by 
Wilcox as mitigation consists of denials that he stalked Taunia Bozarth. Wilcox 
testified: "I still don't believe I ever stalked that lady. You keep using this 
word 'stalk'". Transcript, p. 58. He also stated: "[w]ell, I don't agree with 
the jury verdict or the court of - the Court of Criminal Appeals' decision. I'll 
abide by the punishment, and that's where I'm at." Transcript, p. 56. Wilcox 
responded again in the same manner when asked if he was willing to take any 
responsibility:

 
 Q: Do you take any responsibility for the conviction for stalking Taunia 
 Bozarth?
 A: I disagree with the jury's decision, I disagree with the Court of 
 appeals - criminal --- court of criminal appeals decision [sic], but I've 
 done my punishment or I'm doing it now.
Transcript, p.60.
¶52 Wilcox has already had an opportunity to appeal his conviction, which has 
now become final. These proceedings are not the proper place for Wilcox to 
attempt to collaterally attack his conviction. State ex rel. Oklahoma Bar 
Ass'n v. Brunson, 1996 OK 32, 
¶¶10-11, 912 P.2d 876. Finally, it 
is absolutely clear from Wilcox's testimony that he has no remorse for his 
actions concerning Taunia Bozarth. Transcript, pp. 162-64. Wilcox was asked 
specifically during the hearing:

 
 Q: Mr. Wilcox, is the answer you don't have any remorse for Ms. 
 Bozarth?
 A: I can't think of any.
 Transcript, p.163.
¶53 Given that Wilcox was previously subjected to discipline by this Court 
for making reckless statements about Judge Bozarth, Taunia Bozarth's husband, 
while he was a candidate for judicial office in violation of Rule 8.2(a) of the 
ORPC, and from the record, almost immediately afterwards began the conduct that 
would lead to his conviction for stalking Taunia Bozarth, Wilcox's lack of 
respect for the law and the judicial office is clear.
IV. 
Conclusion
¶54 The purpose of disciplinary proceedings is not to punish, but to assess 
an attorney's continued fitness to practice law. State ex rel. Oklahoma Bar 
Ass'n v. Garrett, 2005 OK 
91, ¶3, 127 P.3d 600; 
State ex rel. Oklahoma Bar Ass'n v. Taylor, 2003 OK 56, ¶22, 71 P.3d 18. It is also this Court's 
responsibility to impose discipline to safeguard the interests of the public, 
the courts, and the legal profession. Garrett, 2005 OK 91, ¶3; Taylor, 2003 OK 56, ¶22. Before arriving at 
appropriate discipline, however, we must also consider the deterrent effect upon 
both the offending respondent and other attorneys who might contemplate similar 
conduct in the future. Taylor, 2003 OK 56, ¶22; State ex rel. 
Oklahoma Bar Ass'n v. McMillian, 1989 OK 16, ¶24, 770 P.2d 892. It is also appropriate 
for this Court to compare the circumstances in the matter at hand with previous 
disciplinary matters, and for this Court to examine an attorney's past record of 
professional behavior. Taylor, 2003 OK 56, ¶22; State ex rel. 
Oklahoma Bar Ass'n v. Doris, 1999 
OK 94, ¶38, 991 P.2d 1015. 
Although discipline should be administered fairly (i.e. evenhandedly), this 
Court has recognized that the extent of discipline must be decided on a 
case-by-case basis because each situation will usually involve different 
transgressions and different mitigating circumstances. Doris, 1999 OK 94, ¶38.
¶55 After consideration of the evidence, the PRT recommended Wilcox be 
suspended from the practice of law for two years and one day. In light of the 
seriousness of Wilcox's actions, his previous disciplinary history, and the 
mitigating circumstances he presented, we are forced to reach the conclusion 
that disbarment is the only suitable discipline. This Court has an obligation to 
safeguard the interest of the public, the courts, and the legal profession, as 
well as to preserve public confidence in the bar. State ex rel. Oklahoma Bar 
Ass'n v. Moon, 2012 OK 77, 
¶26, 295 P.3d 1. Wilcox's 
repeated disciplinary issues, culminating in the stalking of a Judge's family 
member, severely undermine that confidence. Wilcox has shown no remorse, and 
instead has repeatedly insisted that his conduct was not criminal, despite his 
conviction.
¶56 The nature of Wilcox's conviction for stalking the wife of a sitting 
judge suggests a lack of respect for the judiciary, and Wilcox's history of 
repeated violations of the ORPC reveals a lack of respect for ethical 
requirements necessary to ensure the public's confidence in the integrity of the 
bar. An examination of the evidence compels the conclusion that Wilcox is not 
fit to practice law. It is therefore ordered by this Court that Respondent, 
Thomas Joseph Wilcox, is disbarred from the practice of law in Oklahoma and that 
his name is stricken from the roll of attorneys. The disbarment is to be 
effective from the date Wilcox received his interim suspension on June 30, 
2011.
¶57 The Oklahoma Bar Association has moved for an assessment of costs against 
Wilcox in the amount of $4,935.22. Pursuant to Rule 6.16 of the RGDP, 5 O.S. 
2011 Ch. 1, App. 1-A, when discipline results, the Oklahoma Bar Association is 
entitled to be reimbursed for the cost of the investigation, the record, and 
disciplinary proceedings. However, this Court does not find it appropriate to 
assess as costs the amount the members of the PRT spent on lunch during the two 
days of the hearing. As a result, the amount of $82.20 is deducted, and Wilcox 
is ordered to pay costs of the proceedings in the amount of $4,853.02 not later 
than ninety days from the date this opinion becomes final.

RESPONDENT DISBARRED AND HIS NAME IS STRICKEN FROM THE ROLL 
OF ATTORNEYS, THE DISBARMENT TO BE EFFECTIVE FROM THE DATE RESPONDENT WAS 
SUSPENDED BY THIS COURT'S JUNE 30, 2011 ORDER; COSTS IMPOSED.

ALL JUSTICES CONCUR

FOOTNOTES

[1] The 
form had been filed after the deadline, but with the consent and approval of 
election officials. Wilcox II, 2009 OK 81, ¶58.

[2] It is 
worth noting that this is not the first time Wilcox was informed by a court that 
advancing funds for travel to appointments to his clients might violate Rule 1.8 
of the ORPC. He was informed of this in an order of the Workers' Compensation 
Court issued on October 3, 2006, in a different matter, In Re Claim of: Leroy 
James Sadler, No. 2002-16046Y, Complainant's Exhibit 15.

[3] The 
language of Rule 1.8(e) was altered when the rule was amended effective January 
1, 2008, but the overall substance of the rule remains the same. The current 
version of the Rule 1.8(e), ORPC, 5 O.S. Supp. 2008, Ch. 1, App. 3-A 
provides:
(e) A lawyer shall not provide financial assistance to a client in connection 
with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the 
repayment of which may be contingent on the outcome of the matter; and
(2) a lawyer representing an indigent client may pay court costs and expenses 
of litigation on behalf of the client.

[4] During 
the hearing, Wilcox was asked:
Q: From the complaints that were made against you, sir, in the criminal case 
as well as the victims protection order that was issued and then reversed 
against you, can you tell us, was there ever any complaint that you had any kind 
of a weapon on you at any of those times?
A: Never. I don't -- I don't have any weapon including pocketknives.
Q: Was there ever any claim of any assaultive behavior, you offering to do 
bodily harm to any of these people making any complaint?
A: Never.
Transcript, pp. 84-85.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 2014 OK 4, 321 P.3d 168, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WEIGEL
Cited
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 2000 OK 95, 17 P.3d 456, 71 OBJ 3227, STATE ex. rel. OKLAHOMA BAR ASSN. v. SMOLEN
Discussed at Length 1989 OK 16, 770 P.2d 892, State ex rel. Oklahoma Bar Ass'n v. McMillian
Discussed at Length 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed at Length 1991 OK 132, 824 P.2d 1127, 62 OBJ 3769, State ex rel. Oklahoma Bar Ass'n v. Rozin
Discussed 1997 OK 47, 937 P.2d 988, 68 OBJ 1364, State ex rel. Oklahoma Bar Association v. Wolfe
Discussed 1997 OK 87, 942 P.2d 205, 68 OBJ 2326, State v. Wilcox
Discussed at Length 2002 OK 51, 51 P.3d 570, STATE EX. REL. OKLAHOMA BAR ASSOCIATION v. SCHRAEDER
Discussed 1995 OK 145, 911 P.2d 907, 66 OBJ 3991, State ex rel. Oklahoma Bar Assn. v. Thomas
Discussed 2002 OK 84, 60 P.3d 1024, STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNER
Discussed 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed at Length 2003 OK 116, 84 P.3d 107, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SHANBOUR
Discussed at Length 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed at Length 1996 OK 32, 912 P.2d 876, 67 OBJ 863, State ex rel. Oklahoma Bar Assn. v. Brunson
Discussed 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLY
Discussed at Length 2007 OK 31, 163 P.3d 527, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed 2009 OK 81, 227 P.3d 642, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length 2010 OK 67, 240 P.3d 675, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McCOY
Discussed 2011 OK 70, 261 P.3d 605, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length 2012 OK 77, 295 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed 2013 OK 46, IN THE MATTER OF THE STRIKING OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed at Length 2013 OK 49, 309 P.3d 108, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MILLER
Cited 2013 OK 73, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McARTHUR
Discussed 1977 OK 117, 567 P.2d 975, STATE EX REL. OKL. BAR ASS'N v. HALL
Discussed 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed at Length
Title 21. Crimes and Punishments Cite
Name
Level 21 O.S. 1021, Indecent Exposure - Indecent Exhibitions - Obscene or Indecent Writings, Pictures, Etc. - Solicitation of Minors
Cited 21 O.S. 1173, Penalties for Stalking - Definitions
Discussed at Length